Theodore Anthony **DUISEN**, Appellant,

v.

**STATE** of Missouri, Respondent.

No. 53988.

Supreme Court of Missouri,
En Banc.

June 9, 1969.

Theodore F. Schwartz, Clayton, for appellant.

John C. Danforth, Atty. Gen., Gene E. Voights, Asst. Atty. Gen., Jefferson City, for respondent.

HENLEY, Judge.

Appellant (hereinafter movant or defendant) was convicted in the Circuit Court of the City of St. Louis of first degree murder and sentenced to death in accordance with the verdict of a jury. He appealed from that conviction. The judgment was affirmed July 10, 1967, in State v. Duisen, Mo., 428 S.W.2d 169, and the date of execution set for August 25, 1967. Certiorari was denied by the Supreme Court of the United States on March 4, 1968. See 390 U.S. 962, 88 S.Ct. 1063, 19 L.Ed.2d 1159. Thereafter, on May 9, 1968, movant filed in the trial court a motion to vacate and set aside the judgment and sentence pursuant to our Rule 27.26.[1] The motion was heard and on June 10, 1968, overruled. This appeal followed. We affirm.

The principal ground of movant's motion and his principal point on this appeal is that rights guaranteed him by the Sixth and Fourteenth Amendments to the Constitution of the United States, as construed by the Supreme Court of the United States on June 3, 1968, in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776,[2] were denied in that veniremen with conscientious opinions against imposition of the death penalty were, during voir dire examination, excluded for cause from selection as members of the trial jury.

Movant does not state which members of the panel of veniremen were excluded for cause. A transcript of the voir dire examination of the panel was not a part of the record on appeal from the judgment of conviction; nor was it made a part of the record on this appeal. Consequently we have had to secure it. We have searched and carefully examined this transcript for any record of the exclusion of veniremen for the cause asserted by movant, and have found none. We note at the outset that the panel was not examined by the State either on the question of whether any venireman had an opinion such as would preclude him from finding movant guilty of an offense punishable with death[3] or, in the vernacular, any who had conscientious scruples against imposition of the death penalty.

Because of the attack made by movant, we scrutinize particularly the examination of venireman Richard G. Wolfe,[4] excused by the court, noting, incidentally, that the following occurred during interrogation by defense counsel:

"EXAMINATION BY MR. SCHWARTZ [counsel for defendant]:

May it please the Court, Mr. Walsh, and ladies and gentlemen of the jury panel: it's likewise my opportunity to ask you a few questions. Mr. Walsh said he will try to determine from all the people out here to get twelve people to sit in the trial of the State of Missouri against Anthony Duisen. As Mr. Walsh has told you he is charged with the crime of murder in the first degree. Is there anybody on the panel that's shocked by that word? Does

1. References to rules are to Rules of Criminal Procedure of the Supreme Court of Missouri and V.A.M.R.

2. The court appears to hold in Witherspoon that a sentence of death may not be carried out where the jury which fixed the penalty was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction; that no defendant can constitutionally be put to death at the hands of a tribunal so selected.

3. See Section 546.130, RSMo 1959, V.A.M.S.

4. We have considered also occurrences during the examination of two other members of venire. Venireman Roland R. Seim, in response to a question by defense counsel, stated, "Well, I don't believe actually in a death penalty." He was not excluded from the panel from which the trial jury was selected. Venireman Roy W. Beckmann, Sr., in response to a question by state's counsel, stated that he would decide the case "According to the law, although I have mixed feelings about the death penalty." He served on the trial jury.

that offend anybody so much that they may not be able to sit here and hear the case? I can understand it. You are shaking no. I assume everybody else is saying no by their silence.

THE COURT: Did Mr. [Richard G.] Wolfe put up his hand?

MR. WOLFE: The murder part of it, I would prefer not to have any part of a murder trial.

THE COURT: The question is not your preference but whether you believe you could fairly try the case. Counsel will have certain peremptory challenges. What he is asking now is whether, when you just hear the charge, one of murder in the first degree, do you feel you couldn't be a fair juror to both the State and to the defendant?

MR. WOLFE: Yes, I could be a fair juror.

THE COURT: Then I think we will leave it to counsel's further questions but possibly as a peremptory challenge. When you express your preference not to have a part in such a case, from my standpoint this is a matter of duty and not preference on your part.

MR. SCHWARTZ: Let me ask you this, Mr. Wolfe: Is there any reason that you feel you could not serve in a murder case, murder first degree?

MR. WOLFE: I couldn't pass judgment on a person.

MR. SCHWARTZ: You couldn't pass judgment?

MR. WOLFE: No, I couldn't.

MR. SCHWARTZ: Do I understand you to mean you couldn't decide the case?

MR. WOLFE: I couldn't decide life or death.

THE COURT: In other words, before you start, you eliminate part of the law provided or the penalties provided in the legislative enactment on the subject, is that it?

MR. WOLFE: Yes.

THE COURT: We will get to see whether there is more inquiry or not, or whether there is a motion.

[At this point counsel turned to question another venireman.]

MR. SCHWARTZ: Mr. Brindel, have you ever served on a criminal jury before?

MR. BRINDEL: No, sir.

MR. SCHWARTZ: Let me ask you this, Mr. Brindel, while I am thinking of it.

MR. WALSH [counsel for the State]: I hate to interrupt, your Honor. If Mr. Schwartz has no further questions of Mr. Wolfe, I will make a motion at this time.

THE COURT: I will let him finish and take the motion up then.

MR. WALSH: All right, fine.

MR. SCHWARTZ: Do you have a food shop?

MR. BRINDEL: Yes.

*       *       *       *       *       *

MR. SCHWARTZ: Is there anybody else on the panel who feels they might have any difficulty in sitting in judgment on a murder in a first degree case, anybody at all feel any hesitation one way or another?
*   *   *

[Apparently none had this "difficulty" or "hesitation" for at this point counsel for defendant immediately proceeded to examine individually eight veniremen, finishing with the eighth at the noon hour when the following occurred.]

THE COURT: We are going to recess for lunch now, and this is the way we will proceed. Mr. Wolfe, I will want to talk to you. I would like for you to wait over here a minute or two, but all the other jurors will be excused to report back here

an hour and a half from now, which is a quarter to two. * * * Excepting, as I said, I want to talk to Mr. Wolfe, all jurors are excused to return here by quarter to two this afternoon * * *.

[At this point the recess was taken. The court apparently gave counsel for defendant leave to attend to a matter in another courtroom during the latter part of the noon hour.]

[The following occurred when court reconvened for the afternoon session.]

THE COURT: I think I should say to the jurors I gave Mr. Schwartz permission to attend some business in another court located in the Civil Courts building, expecting that he could probably accomplish it more speedily than he could, that it turned out he could.

MR. SCHWARTZ: Judge, I am sorry.

THE COURT: I am trying to explain you were absent with my permission. I did give you permission to be in another court at 1:45 but I thought you would be here by 2:00 but unfortunately it didn't go that fast. Now you may proceed. You were in the midst of asking questions. I have excused the one juror, Mr. Wolfe, but we won't replace him now.

MR. SCHWARTZ: I am sorry about being late.

THE COURT: You had permission and that's the important thing."

To recapitulate, during defense counsel's examination of venireman Brindel, counsel for the state interrupted to refer to venireman Wolfe and say that he (counsel for the state) would make a motion. He did not state the nature of or grounds for the motion he proposed to make.[5] Counsel did not then or at any time thereafter make a motion with reference to venireman Wolfe; nor did he object to or challenge the venireman. Mr. Wolfe was excused from the panel by the trial judge during the noon recess, but the reason for his being excused is not stated.

■ Venireman Wolfe, in response to a question by the court, said that he would, before the trial started, eliminate " * * * part of the * * * penalties provided * * * " by law for the offense with which the defendant was charged. He was not eligible to serve as a juror, because he obviously was not willing to consider all the penalties provided by law. No doubt this or some other good reason prompted the court to excuse this venireman. We may not assume that the court excused him for a reason not sufficient, or for the broad reason stated in movant's point; on the contrary, the presumption is that the court excused him for good and sufficient reason.[6]

We hold that no member of the venire was excluded from selection on the panel from which the trial jury was ultimately chosen for the reasons charged in movant's

---

5. We can only speculate on the nature and grounds of the motion counsel had in mind. Even if we assume (and we may not) that counsel had in mind challenging venireman Wolfe for cause on the theory that he had expressed an opinion which would preclude him from finding defendant guilty of an offense punishable with death, counsel did not do so, and the state would have thereby waived any disqualification of the venireman on that theory. Section 546.130, RSMo 1959, V.A.M.S. Moreover, had counsel challenged venireman Wolfe for cause on that theory the challenge should, and no doubt would, have been denied by the trial court, because the venireman did not disqualify himself on that ground.

6. As stated, movant did not indicate which members of the panel were excluded from the jury for the reason stated in his point. If, by chance, he had the view that venireman Wolfe was excused by the court for this reason, he had an opportunity at the murder trial to make and preserve his record on the question. He had his second opportunity to make his record by presenting proof thereof during this post-conviction proceeding. He did not make an effort to do so, which leads us to the conclusion that not only was this not his view, but also that he knew that the principal ground of his motion was not true.

principal point; that the record does not support movant's contentions and he has, therefore, failed to sustain his burden of proof. Rule 27.26(f). Witherspoon v. Illinois, supra, an ambiguous decision which takes a long step toward " * * * the destruction of our ancient judicial and constitutional concept of trial by an impartial jury * * *,"[7] is not applicable to the facts in this case. We recognize but need not discuss, because not necessary to our decision, the valid distinctions to be made between the Illinois statute[8] providing for challenges for cause of jurors who have conscientious scruples against capital punishment, referred to in Witherspoon, and the Missouri statute[9] on the same general subject.

We quote the two parts of movant's second point:

"The sentence of death imposed upon the petitioner was determined by a jury who, pursuant to the laws of the state of Missouri, have unlimited, undirected and unreviewable discretion in determining whether the death penalty shall be imposed. No rational, fair or uniform standards for making this determination are set forth by statute or judicial decision. Thus the capital sentencing system set up under Missouri law permits jurors to utilize illegal and unconstitutional factors in sentencing petitioner to death, and results in the imposition of the death penalty arbitrarily and capriciously, in violation of equal protection of laws and of the rule of law that is the fundamental principle of due process of law.

"The sentence of death under Missouri law constitutes cruel and unusual punishment in violation of the Eighth Amendment as made applicable to the state under the due process clause of the Fourteenth Amendment in that the jury imposed the sentence of death whimsically and without standards. Such punishment is cruel, because it is arbitrary and irrational and causes persons to suffer for an extended period of time before death."

Many years ago the legislative branch declared the policy of this state to be that for the offense of first degree murder the punishment shall be either life imprisonment or death. That policy entrusts absolute discretion in a jury to make the decision whether the punishment assessed shall be one or the other, without standards or rules to guide the jury in making that decision. This policy has been in effect well over a century. Movant contends that this discretion should be limited, directed and controlled by uniform standards. We doubt the wisdom of prescribing standards in this area of criminal jurisprudence. Movant asserts that because standards (unarticulated by him) were not available to guide and direct the jury in making the decision in this case, its assessment of the death penalty violates his constitutional rights and that the law[10] authorizing imposition of the alternative punishments is unconstitutional because violative of the equal protection and due process clauses of the Fourteenth Amendment to the Constitution of the United States.

It does not follow that because the law entrusts this discretion to a jury without standards to direct and control its choice between the alternative punishments renders the law unconstitutional. We hold that the law is not unconstitutional and that movant's rights were not violated. The finding and judgment of the trial court clearly is not erroneous.

If this policy is to be changed to provide standards and rules to limit, control and direct a jury in making its decision between imprisonment for life and the death penalty,

7. See dissenting opinion of Mr. Justice Black, at page 1786 of 88 S.Ct.

8. Illinois Revised Statutes, 1959, Chapter 38, Section 743. See also 88 S.Ct., l. c.

1772, footnote 1, for reference to subsequent changes in that section.

9. Section 546.130, RSMo 1959, V.A.M.S.

10. Section 559.030, RSMo 1959, V.A.M.S.

that is the function of the legislature; not the court. The genius and constitution of such rules and standards as might be established and, more important, the determination of whether they are necessary, desirable and practical is a public policy question which should and will be left to the legislative branch whose members, directly responsible to the people, have an authority this court does not have.

 Movant further contends that the death sentence is cruel and unusual punishment and therefore violates the Eighth Amendment; that execution of the sentence by lethal gas is cruel in that it causes persons to suffer for an extended period of time before death.

The death sentence is not unusual; it has been imposed since the beginning of time. The framers of our federal[11] and state[12] constitutions recognized and contemplated that this sentence could and would be imposed.

■ At the hearing on his motion to vacate movant presented evidence on his theory that execution by lethal gas is cruel. This evidence consisted of testimony of the Records Custodian of the Missouri Penitentiary showing the time interval between the moment gas was released and the moment of death in connection with executions since the first by that method on March 4, 1938. The time interval in each was very brief. Movant concludes from this evidence that the person executed was subjected to prolonged suffering. There is no evidence of any suffering during these executions; none to support his conclusion. The trial court found " * * * that movant has failed to establish that the method of capital punishment used in Missouri constitutes a cruel punishment by reason of prolonged suffering." This finding of the court is not clearly erroneous.

The judgment is affirmed.

11. See Fifth and Fourteenth Amendments to Constitution of the United States.

All concur except SEILER, J., who dissents in separate dissenting opinion filed.

SEILER, Judge (dissenting).

I respectfully dissent, on the ground we should await the disposition of Maxwell v. Bishop, 393 U.S. 997, 89 S.Ct. 488, 21 L.Ed. 2d 462, in which certorari was granted, one point for consideration being "Whether Arkansas' practice of permitting the trial jury absolute discretion, uncontrolled by standards or directions of any kind, to impose the death penalty violates the Due Process Clause of the Fourteenth Amendment?"

It is possible the Maxwell v. Bishop case will settle the question. Even if it does not, I would like to see the reasoning used and authorities relied on by the highest court in the land in passing on this important question before arriving at a decision on the merits in this case.

12. See Sections 10, 19 and 20, Article I, Constitution of Missouri.