237 So.2d 445 (1970)
Willie CAPLER
v.
STATE of Mississippi.
No. 45737.
Supreme Court of Mississippi.
June 8, 1970.
Rehearing Denied July 2, 1970.
Fountain D. Dawson, Campbell, DeLong, Keady & Robertson, James L. Robertson, Greenville, for appellant.
A.F. Summer, Atty. Gen., by Guy N. Rogers, Asst. Atty. Gen., and Velia Ann Mayer, Sp. Asst. Atty. Gen., Jackson, for appellee.
*446 SMITH, Justice.
Willie Capler was indicted for the murder of Idella Harris. Following a trial in the Circuit Court of Washington County, the jury returned an unqualified verdict of "guilty as charged." Accordingly, he was sentenced to suffer death in the manner prescribed by law. Mississippi Code 1942 Annotated section 2217 (1956). This appeal is from that conviction and sentence.
There is no substantial dispute in the evidence touching the circumstances of the homicide.
Capler and Idella Harris, although not married to each other, were living together. In the late evening of the day on *447 which the homicide occurred, Capler, Idella Harris and the latter's daughter, had gone to a place called V & S Barbeque Pit. There they obtained a table and spent some time drinking beer and whiskey. No harsh or angry words were overheard at anytime during this interval, one witness having testified that they were "laughing and joking."
Sometime after 2:00 in the morning, Capler left the table and went outside to his automobile. His purpose in so doing does not appear in the record. Shortly afterward he returned to the front door. It is unclear from the evidence whether he then "jerked" Idella Harris outside or whether she went with him voluntarily. In any event, both went outside the cafe. The daughter then also went outside. She testified that when she got outside, Capler told her mother to get in his automobile but told her, the daughter, that she could not get in. Some conversation ensued during which Capler, who already had a pistol in his hand, fired a shot at the daughter, who thereupon retreated into the cafe. Almost immediately, the sound of other shots was heard by those in the cafe. Those inside the cafe went out and found that Idella Harris had been shot and was lying on her back dead. Capler was seen driving rapidly away.
An autopsy revealed that the deceased had been shot 5 times, the fatal shot having severed the spinal cord.
Capler offered no defense save that of insanity. Prior to the trial, although a requested special venire already had been summoned, the court granted a defense request for a continuance so that a mental examination might be made of Capler. This examination was ordered and duly conducted by the medical and psychiatric staff of Mississippi State Hospital (for the insane). The result was that Capler was found to be without psychosis and mentally competent. Subsequently, after a jury had been selected but prior to Capler's trial, the court held a preliminary evidentiary hearing, out of the presence of the jury, for the purpose of determining Capler's mental condition and ability to stand trial. At this hearing one of the psychiatrists who had examined Capler, testified for the prosecution and said that, in his opinion, based on a psychological examination, which included psychiatric tests, neurological studies, electroencephalogram, skull films and lab work, there was no evidence of psychotic thinking or behavior on the part of Capler; that he could understand the nature of the charges against him; and that he could intelligently confer with his attorney and aid in his own defense. Skull x-rays had been normal, although it was contended in Capler's behalf that he had suffered several head injuries which had affected his sanity. Capler's intelligence quotient was 88, which was within the "dull-normal" range.
Capler's mother and employer testified in his behalf touching his mental competency to stand trial.
Upon evidence presented the trial court was fully justified in concluding that Capler was mentally competent to stand trial and able to intelligently consult with his attorney and to understand the nature of the charge upon which he was being tried.
In the trial itself, these same witnesses (his mother and employer) testified in support of Capler's defense of not guilty by reason of insanity. They gave much the same testimony as they had previously given at the preliminary hearing. To state the matter most favorably to appellant, this testimony again was opposed by cogent testimony offered by the prosecution which strongly tended to establish Capler's sanity, and that he had known the difference between right and wrong. Thus an issue of fact was created which the jury resolved against Capler in returning its verdict of guilty as charged. This verdict was not against the weight of the evidence but was amply supported by it.
Counsel for appellant assign a number of matters as having constituted prejudicial *448 error, requiring reversal of Capler's conviction.
Most of these are the same or similar to contentions which have been made and rejected in former cases. Here, however, they are argued with "conspicuous ability."
The contention is made that the jury was not representative of a true "cross section" of Washington County. This argument rests largely upon two facts, (1) Mississippi Code 1942 Annotated section 1764 (1956) exempts persons in certain categories from being required to serve as jurors, and (2) jurors were drawn in equal numbers from the 5 supervisors districts although such districts were unequal in population. To support this proposition, appellant relies on decisions of the United States Supreme Court dealing respectively, with the systematic exclusion from juries of negroes, laborers, wage earners and women. In Pendergraft v. State, 213 So.2d 560 (Miss. 1968) this Court dealt with the "women juror" question. Citing State v. Hall, 187 So.2d 861 (Miss. 1966), it was said:
[T]hat the power to prescribe the qualifications for jurors is in the legislature and it has the power to make reasonable classifications. The 1968 Mississippi Legislature, we note, has exercised its prerogative and has recently enacted a law permitting women to serve on grand and petit juries.
We do not consider the exemptions set forth in this statute unreasonable or discriminatory, nor was appellant's right to a fair trial prejudiced thereby.
The second facet of the proposition, that jurors were drawn in equal numbers from each district, although the districts were not equal in population, is analogous to the question disposed of in Armstrong v. State, 214 So.2d 589 (Miss. 1968). This Court held:
The mere fact that there are more jurymen summoned from one supervisor's district than another does not, taken alone, indicate an unfair method of jury selection. § 1766, Miss. Code 1942 Ann. (Supp. 1966); * * *.
Moreover, the statutory method of selecting jurors is directory, not mandatory, and unless it is shown that the method used was fraudulent or such a radical departure from the method prescribed by the statute as to be unfair to the defendant or to prevent due process of law, this Court will not reverse. Boyd v. State, 204 So.2d 165 (Miss. 1967); Ladner v. State, 197 So.2d 257 (Miss. 1967); Wiggins v. State, 224 Miss. 414, 80 So.2d 17 (1955).
No prejudice to Capler's rights is shown to have resulted from the method employed in selecting the jury in this case. Actually, after he had obtained one special venire, his motion for a continuance was granted for the purpose of a requested psychiatric examination. Following this examination, a second special venire was drawn and it was from this second special venire that the jurors who tried him were selected. Appellant cites Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) as supporting his contention that it was error to permit the prosecution to excuse peremptorily 2 prospective jurors who, on their voir dire examination, had given equivocal answers regarding their attitude toward the imposition of capital punishment. Mississippi Code 1942 Annotated section 2520 (1956), allows to the prosecution as well as to the defendant in capital cases a limited number of peremptory challenges. These may be exercised until they are exhausted at the unrestricted discretion of each party without assigning any cause or reason. In addition, each party has the limitless right to challenge prospective jurors for good cause. Witherspoon dealt with a situation where the trial court had accepted as good cause for excusing prospective jurors, the fact that such jurors had expressed doubt as to their willingness to impose the death penalty under any circumstances. Witherspoon did not touch upon the question now *449 raised. The effect of the proposition advanced by appellant would be to deprive the prosecution of its right to challenge jurors peremptorily (until its peremptory challenges were exhausted) for any reason whatever, including a doubt on the part of the prosecution that the juror would follow the law as to imposition of the death penalty. The defendant, of course, has the same number of peremptory challenges by means of which he may reject prospective jurors at his unrestricted discretion.
It is next argued that Mississippi Code 1942 Annotated section 2536 (1956) providing for the mandatory imposition of the death penalty upon an unqualified jury verdict of guilty in a murder case is unconstitutional. It is argued that its unconstitutionality consists in the fact that one convicted of murder shall suffer death, unless the jury, in its "unguided and unrestricted discretion," shall see fit to mitigate the sentence by fixing the punishment at life imprisonment, or it may, in case of disagreement as to the punishment, certify that fact to the court, in which event the sentence shall be life imprisonment.
Appellant relies for support of the above contention upon Maxwell v. Bishop, 398 F.2d 138 (8th Cir.1968) certiorari granted 393 U.S. 997, 89 S.Ct. 488, 21 L.Ed.2d 462 (1968). This case has just been remanded by the United States Supreme Court to a United States District Court for the determination of the question as to whether jurors were excused because they entertained scruples against the infliction of the death penalty. Maxwell's conviction, however, was not reversed.
In Mississippi, the Legislature, by Mississippi Code 1942 Annotated section 2217 (1956) has provided that in cases of murder, the penalty shall be death unless the jury shall fix the punishment at life imprisonment or be unable to agree upon the punishment. The validity of this statutory provision has been consistently recognized. Irving v. State, 228 So.2d 266 (Miss. 1969); Shimniok v. State, 197 Miss. 179, 19 So.2d 760 (1944); Spain v. State, 59 Miss. 19 (1881). In Irving v. State, supra, the arguments now advanced by appellant were considered by this Court and rejected. To venture a prediction as to the ultimate fate of the Maxwell v. Bishop case, supra, in the United States Supreme Court would require a power of vaticination, which we do not possess.
Courts in other jurisdictions also have declined to follow and have rejected arguments similar to those now made by appellant upon this point. In re Ernst's Petition, 294 F.2d 556 (3rd Cir.1961) certiorari denied 368 U.S. 917, 82 S.Ct. 198, 7 L.Ed.2d 132 (1961); In re Anderson, 69 Cal.2d 613, 73 Cal. Rptr. 21, 447 P.2d 117 (1968); State v. Walters, 145 Conn. 60, 138 A.2d 786 (1958) appeal dismissed and certiorari denied, 358 U.S. 46, 79 S.Ct. 70, 3 L.Ed.2d 45 (1958); Chatterton v. Dutton, 223 Ga. 243, 154 S.E.2d 213 (1967) certiorari denied, 389 U.S. 914, 88 S.Ct. 247, 19 L.Ed.2d 266 (1967); State v. Latham, 190 Kan. 411, 375 P.2d 788 (1962) certiorari denied, 373 U.S. 919, 83 S.Ct. 1310, 10 L.Ed.2d 418 (1963); Duisen v. State, 441 S.W.2d 688 (Mo. 1969); and State v. Johnson, 34 N.J. 212, 168 A.2d 1 (1961) appeal dismissed, 368 U.S. 145, 82 S.Ct. 247, 7 L.Ed.2d 188, certiorari denied, 368 U.S. 933, 82 S.Ct. 370, 7 L.Ed.2d 195 (1961).
It should be noted that much of appellant's argument in support of this proposition is taken from the dissent of In re Anderson, supra, and is answered logically and overwhelmingly in the controlling opinion.
Appellant next complains that Mississippi Code 1942 Annotated sections 2217 and 2537 (1956) are unconstitutional in providing for the fixing of the punishment in murder cases by the same jury that determines guilt. Substantially, the same argument was advanced and rejected in United States ex rel. Witherspoon v. Ogilvie, 337 F.2d 427 (7th Cir.1964) certiorari denied 379 U.S. 950, 85 S.Ct. 452, 13 L. *450 Ed.2d 547 (1964). Nor is there anything in Rouse v. State, 222 So.2d 145, rehearing denied, 222 So.2d 150 (Miss. 1969), which casts doubt upon the constitutional validity of this procedure. In Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967) the Court said:
Two-part jury trials are rare in our jurisprudence; they have never been compelled by this Court as a matter of constitutional law, or even as a matter of federal procedure.
In many states, including Mississippi, the death penalty is imposed upon conviction of first degree murder unless the jury recommends mercy or life imprisonment. Ark.Stat.Ann. §§ 41-2227, 43-2153 (1964); Conn. Gen. Stat.Rev. § 53-10 (1965 Supp.); Del. Code Ann. Tit. 11, §§ 571, 3901 (1966 Supp.); Fla. Stat. §§ 782.04, 919.23 (1965) F.S.A.; Ga. Code Ann. § 26-1005 (1953); La.Rev.Stat. 14:30 (1950); Md. Ann. Code, Art. 27, § 413 (1967); Mass. Gen. Laws Ann., c. 265, § 2 (1959); Miss. Code Ann. § 2217 (1956); Mont. Rev. Codes Ann. Tit. 94-2505 (1949); N.J. Stat. Ann. § 2A:113-4 (1969); N.M. Stat. Ann. § 40A 29-2 (1953); N.C. Gen. Stat. § 14-17 (1969); Ohio Rev. Code Ann., Tit. 29, § 2901.01 (1954); S.C. Code Ann., Tit. 16, § 16-52 (1962). The practice of allowing the jury to fix the penalty in a criminal case has been held to be constitutional. Lindsey v. United States, 77 U.S.App.D.C. 1, 133 F.2d 368 (1942). The Alabama Supreme Court recently in Mathis v. State, 283 Ala. 308, 216 So.2d 286 (1968) upheld an Alabama statute which provided for a unitary trial and in so doing stated:
That ground of the petition assailing § 318, Title 14 of the Code of Alabama, proceeds upon the theory that it provides no separate proceedings and the opportunity given the defendant to present evidence of the issue of sentence separately from testimony as to his guilt. No case is cited in support of such a procedure. We are asked to prescribe a course of trial procedure which has not been undertaken by our lawmakers * * *.
While Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, reflects the individual repugnance of the writer of the opinion toward the death penalty, there has been by the Supreme Court of the United States no firm holding of invalidity of statutes authorizing the death penalty, nor has that court gone to the extent of requiring separate hearings on the questions of guilt and sentence.
See also Pope v. United States, 372 F.2d 710 (8th Cir.1967), judgment vacated on other grounds, 392 U.S. 651, 88 S.Ct. 2145, 20 L.Ed.2d 1317 (1968).
Moreover, it has been held that the complete absence of a hearing in aggravation or mitigation, where a mandatory penalty is provided, does not violate due process. Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1947) and People v. Burnett, 394 Ill. 420, 68 N.E.2d 733 (1946).
The decision in United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) which dealt with the imposition of the death penalty under the Federal Kidnapping Act, is distinguishable from the case here and turned upon the peculiar provisions of the Act. In two cases factually similar to the case at bar this Court distinguished the Jackson case, supra, Irving v. State, supra and King v. Cook, 211 So.2d 517 (Miss. 1968).
The next proposition advanced by appellant is that imposition of the death sentence upon him unconstitutionally deprived him of the equal protection of the laws.
In answer to this proposition, the State cites Chatterton v. Dutton, 223 Ga. 243, 154 S.E.2d 213 (1967), certiorari denied, 389 U.S. 914, 88 S.Ct. 247, 19 L.Ed.2d 266 (1967), wherein the Georgia court said:
The guaranty of equal protection of the laws requires that all persons shall be treated alike under like circumstances and conditions, both in privileges conferred *451 and in liabilities imposed. * * * The statute which permits the jury on finding a defendant guilty of murder to recommend or not to recommend mercy applies to all persons alike under like circumstances and does not offend the equal protection clause of the Fourteenth Amendment.
The State also cites State v. Latham, 190 Kan. 411, 375 P.2d 788 (1962), certiorari denied, 373 U.S. 919, 83 S.Ct. 1310, 10 L.Ed.2d 418 (1963). In construing the Kansas statute the Kansas Supreme Court said:
Viewing the statute as here construed, the fact that a jury could impose life imprisonment in one case and death in another, or different punishments in the same case, does not result in the possibility of unequal punishment to that class of persons convicted of murder in the first degree. The legislature has a very great latitude in prescribing and fixing punishment for crime * * *. In McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393, it was stated that the Fourteenth Amendment permits the states a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. In Collins v. Johnston, 237 U.S. 502, 35 S.Ct. 649, 59 L.Ed. 1071, it was said that the establishment of appropriate penalties for the commission of crime and to confer upon the judicial tribunals a discretion respecting the punishment to be inflicted in particular cases, within the limits fixed by the law-making power, are functions peculiarly belonging to the several states.
Appellant also attacks as unconstitutional Mississippi Code 1942 Annotated section 2217 (1956) which provides:
Every person who shall be convicted of murder shall suffer death, unless the jury rendering the verdict shall fix the punishment at imprisonment in the penitentiary for the life of the convict; or unless the jury shall certify its disagreement as to the punishment as provided by section 1293 [Code of 1930; § 2536, Code of 1942] in which case the court shall fix the punishment at imprisonment for life. (Emphasis added).
However, where a sentence imposed is within limits set by statute, the sentence itself is neither cruel nor unusual punishment. Sumrall v. United States, 397 F.2d 924, (5th Cir.1968); certiorari denied, 393 U.S. 991, 89 S.Ct. 467, 21 L.Ed.2d 455; Harris v. State, 142 Miss. 342, 107 So. 372 (1926); Shimniok v. State, 197 Miss. 179, 19 So.2d 760 (1944). In Shimniok, this Court upheld the statutory method of determining punishment in murder cases, although recognizing various arguments both for and against capital punishment.
In re Kemmler, 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519 (1890), the United States Supreme Court held that the imposition of the death penalty by means of electrocution was not violative of the constitutional ban on cruel and unusual punishment. Courts in this country have generally upheld the general constitutionality of capital punishment.
Appellant criticizes the M'Naghten rule as it exists in Mississippi as the test of legal insanity in criminal cases and argues that it was error to give an instruction to the jury based upon it. We are aware that some courts are moving away from the right and wrong test in favor of other standards. However, it is an understatement to say that the wisdom of this move has not been established. The M'Naghten rule continues to have the support of very respectable judicial opinion.
Finally, complaint is made that the trial court declined to allow three jurors to give testimony impeaching their verdict. The jury in this case had been instructed quite clearly as to the several permissible verdicts and of their respective effect. They were informed by instruction that a verdict of "guilty as charged" required the imposition of the death penalty. They were told this in clear and simple language.
*452 Upon the hearing of appellant's motion for a new trial, three jurors were tendered as witnesses for the purpose of testifying that they had not understood that their unqualified verdict of guilty would require the court to sentence appellant to death. The trial court correctly declined to permit them to testify. Either party may have the jury polled when it returns its verdict. After the verdict has been received and entered, however, it is well established that testimony of jurors will not be received for the purpose of impeaching their verdict. Planters Wholesale Grocery v. Kincade, 210 Miss. 712, 50 So.2d 578 (1951); McGee v. State, 50 So.2d 394 (Miss. 1951); White's Lumber & Supply Co. v. Collins, 186 Miss. 659, 191 So. 105, suggestion of error overruled, 192 So. 312 (1939); Brabham v. State of Mississippi for Use of Smith, 96 F.2d 210, rehearing denied, 97 F.2d 251 (5th Cir.1938), certiorari denied, 305 U.S. 636, 59 S.Ct. 103, 83 L.Ed. 409 (1938); Bridges v. State, 154 Miss. 489, 122 So. 533 (1929); McGuire v. State, 76 Miss. 504, 25 So. 495 (1899).
We have examined the entire record in this case with the utmost care, keeping always in mind the gravity of the issues. Upon the basis of the record, we have been constrained to the conclusion that the appellant was well and ably represented in the trial court and was fairly tried. On appeal, as we have said, he has been represented with "conspicuous ability" and nothing that might be urged in his behalf for reversal has been left unargued. We have not been able to discover any prejudicial error in appellant's trial which would warrant the reversal of the conviction and sentence.
We cannot conclude the opinion more appropriately than by quoting the words of former United States Supreme Court Justice Cardozo, who wrote:
The judge, even when he is free, is still not wholly free. He is not to innovate at pleasure. He is not a knight errant, roaming at will in pursuit of his own ideal of beauty or of goodness. He is to draw his inspiration from consecrated principles. He is not to yield to spasmodic sentiment, to vague and unregulated benevolence. He is to exercise a discretion informed by tradition, methodized by analogy, disciplined by system, and subordinated to "the primordial necessity of order in the social life." Wide enough in all conscience is the field of discretion that remains.
The appellant, having been fairly tried and convicted and having been lawfully sentenced to death in the manner prescribed by law, it becomes our unhappy duty to affirm and to fix the 24th day of July, 1970 as the date of execution.
Affirmed, and the 24th day of July, 1970 fixed as the date of execution.
All Justices concur.