SMITH, Justice:
Leola Joiner was indicted for murder and convicted of manslaughter in the Circuit Court of Bolivar County. She was sentenced to serve a term of 12 years in the penitentiary. This appeal is from that conviction and sentence.
*792 Appellant and her victim, Ernest Griffin, had been living together for some time, although not married, and she had borne a child by him. On the night of the homicide, both appellant and Griffin had been drinking and the record would justify the conclusion that both were under the influence of intoxicants. They were in Griffin’s home when he grabbed appellant’s niece to prevent her from complying with appellant’s request to gather up some dirty clothes. When appellant remonstrated he knocked her down and jumped on top of her. Others present pulled him off and appellant and her niece went outside. Appellant proceeded to the automobile in which she had arrived, opened the car door, got her purse, and took from it a knife. About that time Griffin had also come out of the house. He walked down to the car where he confronted appellant. There is some question as to whether at this juncture he pushed appellant first or she pushed him.
Her own testimony, on this point as a witness in her own behalf, on direct examination, was:
I had this knife in my purse. And, I asked for my purse and I said to him, “Don’t come up on me.” And, he kept coming anyway and then he come one time; I pushed him back; he came back a second time. And, this is when I stab — • stuck him.
On cross-examination she testified:
I just know that he was — he came at me and he was close enough to me to touch me because he was the one that pushed me first.
Q Oh, yes, he pushed you first; he didn’t pull a rifle on you, did he?
A No, sir.
Q He didn’t pull a knife on you, did he?
A No, sir.
Q He didn’t pull any kind of weapon on you, did he ?
A No, sir.
Q In fact, he was trying to make up with you, wasn’t he-—
A —oh, no, sir. No, sir.
Q Well, now, he wasn’t trying to make up, I wonder — Anyway, the first time he came up to you, you shoved him away, didn’t you?
A Because he was angry with me and cursing me—
Q —I know, but you told him, said, “Go on and leave me alone”. Didn’t you?
A Sir—
Q —isn’t that what you told him, “Go on and leave me alone.”
A I said to him, “Don’t come up on me”.
Q Well, he came up on you and you shoved him away, didn’t you ?
A Yes, sir.
Q The first time ?
A Yes, sir.
Q Did he harm you in any way at that time?
A He hit me, sir.
Q When ?
A When he came out there; this is why I told him don’t come up on me.
And further, on cross-examination:
Q And, he hit you. Where’d he hit you ?
A It was a push more or less, sir.
And later on:
Q He didn’t have any gun or any weapon at all, did he ?
A No, sir.
There is, therefore, no suggestion that he was armed or that, if he did touch her at all, it was more than a slight push. In any event, it appeared to the others present *793 that appellant had pushed Griffin. As a matter of fact, however, when she had seemed to push him she had stabbed him in the shoulder with her knife. Apparently, Griffin did not know that he had been cut until another person called his attention to blood on his shirt. At this point, everyone went into the house and a bandage was placed on the cut which no one seems to have regarded as serious. After a time it was decided that Griffin should be taken to a hospital. He was put in the car but it would not start. After a very considerable interval of time spent working on the car it was finally started and the whole party set out for a hospital 22 miles away, although there was one located only 5 miles distant. During this trip appellant and Griffin sat together on the back seat where he attempted to “make love” to her. At one point he had the car stopped and got out to walk around but fell and had to be carried back to the car. At long last, the parties arrived at the hospital where Griffin was placed in the emergency room. Further delay seems to have ensued. Several hours after he had received the stab wound Griffin died. The doctor diagnosed the cause of death as shock induced by loss of blood. The record leaves little doubt that he would not have died if medical aid had been obtained with a reasonable degree of promptitude.
There is almost no material conflict in the evidence. The defense urged was self-defense based in large part upon the violent character of the deceased as evidenced by a number of previous incidents involving attacks upon appellant, proof of which the court permitted to be placed in evidence. Appellant’s counsel also asked this question of one witness, who had known appellant since she was 13, “What is her (appellant’s) reputation in the community in which she lives for peace and violence?” An objection was interposed and sustained by the court and the matter was pursued no further.
The failure to permit the witness to answer this question is assigned and argued as having constituted prejudicial error requiring a reversal, citing Ridgeway v. State, 245 Miss. 506, 148 So.2d 513 (1963).
However, no record was made as to whether the witness knew appellant’s general reputation for peace or violence in the community in which appellant lived. Nor was it shown, either by testimony outside of the presence of the jury or by a statement into the record, that if such general reputation were known to the witness that it was good.
We are unable to assume, in the complete absence of any showing in the record, that the witness either knew appellant’s general reputation in appellant’s community (it appears that witness and appellant did not live in the same community), or that, if such an assumption could be made, that appellant’s reputation was good.
It is probable that, as she now says, in stabbing Griffin she did not actually intend to kill him and that she is now genuinely remorseful.
But it is manifest, even under appellant’s own version of the circumstances, that she was not, at the time she stabbed Griffin, in imminent danger, real or apparent, of losing her life or suffering grave injury at his hands.
Several black and white photographs, properly qualified as to accuracy, were admitted into evidence over appellant’s objection which purported to show the scene and which disclosed a number of dark spots said to have been blood. We are unable to see how the introduction of these photographs prejudiced appellant or, for that matter, aided the case for the prosecution. They neither showed the body nor were they of such gruesome character as to be calculated to arouse the passions of the jury. It was undisputed that appellant stabbed Griffin and that his wound had bled profusely. If permitting their introduction was error it was harmless.
Appellant’s contention addressed to the proposition that the trial court erred in overruling motions to quash the indictment *794 and venire has also been considered. The argument here is predicated upon an order of the United States District Court for the Northern District of Mississippi, Delta Division, entered March 15, 1971, in a suit brought in that court against the Board of Supervisors of Bolivar County, which directed the reapportionment of the supervisor districts of the county.
While the order recites that the existing districts are nullified, clearly it was not within the purview of the order to bring to a halt all of the judicial and fiscal affairs of the county. We do not think the order was intended to have that effect nor that it had that effect. In any event, the order does not purport to be retroactive even within the scope of its obvious in-tendment. The jury lists prepared were prepared at the April, 1971 meeting of the Board of Supervisors. Mississippi Code 1942 Annotated section 1766 (Supp.1971). No proof was offered in support of the motions to quash and it was not made to appear that prejudice of any kind resulted to appellant on account of the method employed in selecting the names from which the jury was ultimately chosen. In the event, only 8 of the 12 peremptory challenges allowed appellant were used. The question involved here is analogous in principle to that dealt with in Moore v. State, 237 So.2d 844 (Miss. 1970). In Moore this Court quoted from Wiggins v. State, 224 Miss. 414, 80 So.2d 17 (1955). In Wiggins the Court said:
Section 1798, Code of 1942, provides that the provisions of law in relation to the listing, drawing, summoning, and impaneling of juries are directory merely and are not mandatory. We held [citations omitted] that a case will not be reversed unless there is a radical departure from the statutory scheme of summoning and impaneling juries. (224 Miss, at 418-419, 80 So.2d at 18).
But if it could be considered that the effect of the order was instantaneous obliteration of district lines for all purposes, the county was not abolished and its character as a body politic would not have been ended. The several branches of county government necessarily would continue to function. Law enforcement, purchases of supplies and payment of bills, maintenance of public roads, speedy determination in the courts of causes, civil and criminal, as well as other indispensable activities of county government would not grind to a halt. The county continues to function as a whole, without regard to former and now nonexistent district lines. Jurors fairly selected and drawn from anywhere in the county, if qualified as such under Mississippi law, in the absence of fraud or any showing of actual prejudice, properly might serve as such. We find no merit in the proposition that the trial court erred in denying appellant’s motions to quash the indictment and venire.
Finally, it is argued that the evidence was insufficient to support appellant’s conviction of manslaughter. On the contrary, it is difficult to see how the jury could have returned any other verdict.
There is ample evidence to support the conclusion that following a quarrel or fight, appellant armed herself with a deadly weapon with which she mortally wounded Griffin at a time when he was unarmed and she was neither in real nor apparent danger of suffering death or grave bodily injury at his hands. The verdict in this case must be affirmed.
Affirmed.
GILLESPIE, C. J., and PATTERSON, ROBERTSON and SUGG, JJ., concur.