910 So.2d 640 (2005)
Tommy BELL a/k/a Tommie Bell, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-01670-COA.
Court of Appeals of Mississippi.
March 1, 2005.
*641 David M. Holly, Greenwood, attorney for appellant.
Office of the Attorney General by: John R. Henry, attorney for appellee.
EN BANC.
MYERS, J., for the Court.

STATEMENT OF FACTS
¶ 1. Tommy Bell worked as a car salesman for Buddy Jones Ford, Lincoln, Mercury, Chrysler, Jeep, Inc. On April 3, 2001, Barbara Lacy entered the dealership intent *642 on purchasing a specific used car because of her need for a reliable vehicle for her work commute. Lacy was assisted by Bell, who helped her complete a credit application. Later that afternoon, Lacy was informed by the dealership's finance manager that her credit application had been denied. After Lacy spoke with the finance manager, Bell told Lacy that the dealership wanted too much money for the car she was interested in anyway, and that from then on they would do business at her home and that she was only to contact him via his cell phone. Later that same day, Bell called Lacy and told her that she could afford a different vehicle than the one she wanted. Bell took the car to Lacy's house the next day in order for her to test drive it. After the test drive, Lacy gave Bell $1,200 in cash, as a down payment on the vehicle. Bell gave Lacy a document that he called a "receipt" and which they both signed. Lacy took possession of the car on May 13, 2001, at which time she signed the remaining paperwork necessary to title the vehicle. This transaction again took place at her home. The formal titling documents indicated that Lacy's down payment had been $3,600, rather than the $1,200 she had actually paid Bell. Lacy testified at trial that the reason she signed the titling documents was because she desperately needed a new car and just signed the papers as they had been prepared by Bell.
¶ 2. Meanwhile, on April 10, 2001, Brandy Randle went to the dealership to inquire into trading in her vehicle. Randle was assisted by Bell, who took some of her personal information in order to check her credit. Randle supplied the information and told Bell that she was a student and that she was not employed. Bell informed her that since she was not working she would need to leave a "hold check" in order to secure a new vehicle. A hold check is the term used by the dealership whereby they hold a check for thirty days before depositing it. Randle supplied Bell with a hold check in the amount of $3,600 on April 16th. Randle testified that Bell told her that if she was not approved for her purchase, he would dispose of the check. Randle moved out of town shortly thereafter and never followed up on the check.
¶ 3. The dealership where Bell worked employs a check guaranteeing service called Tel-Check. Hold checks are processed through a machine at the dealership which transfers information between the two businesses and generates a transaction number which is then written on the check. Unknown to Lacy or Randle, Bell had applied Randle's hold check toward the purchase of Lacy's vehicle. Lacy and Randle testified that they did not know each other, nor had they ever met, until the day before Bell's trial. Bell subsequently drafted Lacy's purchase contract to reflect a down payment amount of $3,600, which was deceitfully supported by applying the hold check Randle had supplied him. However, the check was never processed through the Tel-Check machine. Instead a fictitious number was written on the hold check to create the impression that it was legitimately being held towards Lacy's purchase. Bell then kept Lacy's $1,200 deposit instead of submitting it to the dealership.
¶ 4. Thirty days after receiving Randle's check, the dealership sent the check to Tel-Check for payment. Tel-Check promptly returned the check because it contained a fictitious number. The dealership then began to investigate. They called Lacy at work and asked her to come to the dealership. When she arrived, Lacy explained her dealings with Bell and produced the receipt for her $1,200 down payment. The dealership then called in Bell to explain what he knew about the situation. *643 Bell initially denied any wrongdoing, then when pressed further by the dealership owner, Bell agreed to leave and return with the money. Bell left the dealership that day, but never returned.
¶ 5. Bell was later charged with embezzlement under Mississippi Code Annotated § 97-23-25 (Rev.2000), and convicted by a jury. Aggrieved, Bell appeals asserting the following three issues:
I. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE DEALERSHIP'S OWNER TO TESTIFY AS A LAY WITNESS REGARDING BELL'S HANDWRITING.
II. WHETHER THE TRIAL COURT ERRED BY ALLOWING TESTIMONY REGARDING RACE.
III. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GRANT BELL'S MOTIONS FOR A DIRECTED VERDICT, JUDGMENT NOTWITHSTANDING THE VERDICT, AND BY REFUSING TO GRANT BELL'S PEREMPTORY JURY INSTRUCTION.
Finding no error, we affirm.

LEGAL ANALYSIS

I. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE DEALERSHIP'S OWNER TO TESTIFY AS A LAY WITNESS REGARDING BELL'S HANDWRITING.

STANDARD OF REVIEW
¶ 6. It is well-settled in our jurisprudence that "[r]elevancy and admissibility of evidence are largely within the discretion of the trial court and this Court will reverse only where that discretion has been abused." Hentz v. State, 542 So.2d 914, 917 (Miss.1989) (citing Burt v. State, 493 So.2d 1325, 1326 (Miss.1986); Carter v. State, 310 So.2d 271, 273 (Miss.1975); and M.R.E. 103(a)). The discretion of the trial judge must be exercised within the boundaries of the Mississippi Rules of Evidence. Sewell v. State, 721 So.2d 129, 138(¶ 50) (Miss.1998) (citing Johnston v. State, 567 So.2d 237, 238 (Miss.1990)). Further, evidentiary rulings are affirmed unless they affect a substantial right of the complaining party. Sewell, 721 So.2d at 138(¶ 50) (citing Ivy v. State, 641 So.2d 15, 18 (Miss. 1994); M.R.E. 103(a)).

DISCUSSION
¶ 7. M.R.E. Rule 701 states as follows:
If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to the clear understanding of the testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.
M.R.E. 901(b)(2) states as follows:
(b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
(2) Nonexpert Opinion on Handwriting. Nonexpert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation.
Mississippi law states that the admissibility of this form of evidence is determined by the successful authentication of the defendant's handwriting. Hentz, 542 So.2d at 917. The Mississippi Supreme Court has previously held, and our rules of evidence state, that a person's handwriting may be properly authenticated by either an expert witness or by a lay witness who *644 has prior familiarity with the alleged author's handwriting. Henry v. State, 484 So.2d 1012, 1014 (Miss.1986); M.R.E. 901(b)(2). The only limitation prescribed by Rule 901(b)(2) in regards to lay witness testimony of the authenticity of the author's handwriting, is that the lay witness's opinion must be "based upon familiarity not acquired for purposes of the litigation." M.R.E. 901(b)(2).
¶ 8. In the instant case, James A. Buddy Jones, owner of the Buddy Jones Ford Lincoln Mercury automobile dealership, testified in regards to Bell's signature as follows:
Q. Between September 11, 2000, and June 2001, did you have occasion to look or witness the defendant's handwriting?
A. I have seen his handwriting on several occasions, especially whenyou know this incident came up, I looked at his handwriting. Also looked and compared it to the handwriting on some of the documents.
Q. And did the handwriting on the check
MR. HOLLY: I'm going to object. He's not a expert. He's not been qualified as an expert. He cannot testify, Your Honor, as to who or whatever put those numbers on that check.
MS. CHILES: Your Honor, if a person is familiar with one's handwriting, knows it when he sees it, he can testify as to what that
THE COURT: I'm going to overrule the objection.
MS. CHILES: Thank you, Your Honor.
Jones's testimony does not indicate that his familiarity with Bell's signature was "acquired for the purposes of litigation." M.R.E. 901(b)(2). Rather, his testimony shows that he was familiar with Bell's handwriting, having seen it on several prior occasions, and that he only made direct comparisons of other writings signed by Bell once this incident occurred. Jones does not state that he had only seen Bell's signature after Bell was charged. The Mississippi Supreme Court has previously stated "[a] witness, who in the course of official business or in any other way has acquired by experience a knowledge of a person's handwriting, may state his opinion as to whether a particular writing was made by such person." Wiggins v. State, 224 Miss. 414, 421, 80 So.2d 17, 19 (1955). Bell was employed by Jones for approximately nine months. Jones testified that he had become familiar with Bell's handwriting during this nine month period by stating "I have seen his handwriting on several occasions...." By virtue of his familiarity with Bell's handwriting, Jones was fully qualified to offer his opinion as to whether or not the writing was in fact Bell's signature. Such testimony was rationally based upon his perception, was helpful in making a determination of a fact in issue, and was not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. As such, Jones's testimony meets the requirements for both Rules 701 and 901(b)(2).
¶ 9. In light of Jones's testimony, that he was familiar with Bell's handwriting prior to this event, the plain language of Rules 701 and 901(b)(2) of the Mississippi Rules of Evidence, and the precedent established by the Mississippi Supreme Court allowing the admission of this type of evidence, it can not be stated that the trial judge abused his discretion by allowing Jones's testimony. Therefore, this error is without merit.

II. WHETHER THE TRIAL COURT ERRED BY ALLOWING TESTIMONY REGARDING RACE.

STANDARD OF REVIEW
[O]ur standard of review regarding the trial court's admission of evidence is *645 well-settled: Under the Supreme Court's standard of review, the admissibility of evidence rests within the discretion of the trial court.... Furthermore, the trial court's discretion must be exercised within the scope of the Mississippi Rules of Evidence and reversal will be appropriate only when an abuse of discretion resulting in prejudice to the accused occurs.
Sanders v. State, 757 So.2d 1022, 1023-24 (¶ 5) (Miss.Ct.App.2000).

DISCUSSION
¶ 10. While questioning Lacy on direct examination, the State initiated the following exchange:
Q. Did he (Bell) tell you anything about the white folks at the dealership?
A. Yes, he did.
Q. What did he say about that?
MR. HOLLY: Your Honor, I'm going to object to that. I don't think that has any relevance to this.
COURT: Well, it's overruled.
MS. CHILES: Thank you, Your Honor.
Q. What did he tell you?
A. Okay. I was telling him how little I want[ed] that car. He told me that the white man wanted too much for a fully loaded car with leather seats, that was his exact words.
¶ 11. Bell argues that the trial court should not have allowed the State to elicit testimony regarding race because it was irrelevant to any issue the State was presenting to the jury. Bell objected at trial to the relevancy of the question, and now argues on appeal that the question was unduly prejudicial.
¶ 12. M.R.E. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Bell now argues on appeal that the trial court should have declared the testimony inadmissible because it was highly prejudicial pursuant to M.R.E. 403. Mississippi Rule of Evidence 403 states "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."
¶ 13. The State maintains that since Bell did not base his objection to Lacy's testimony on M.R.E. 403 at the time it was offered, Bell is barred from raising that issue now on appeal. While Bell presents no relevant case law to support his assertion, we are, however, mindful of the Mississippi Supreme Court's holding in Tate v. State regarding the admissibility of racial testimony. Generally, in order to preserve an issue for appellate review, a concurrent objection must be made in the trial court. Tate v. State, 784 So.2d 208, 214(¶ 25) (Miss.2001). "However, in order to prevent a miscarriage of justice, this Court retains the power to notice error notwithstanding trial counsel's failure to preserve the error." Id. at (¶ 25).
¶ 14. We now turn to consider whether the testimony in the trial below is commensurate with that in Tate. Tate involved a white owner of a catfish pond who was convicted for assaulting black poachers. At trial, testimony was elicited from several witnesses, including a deputy sheriff, who recounted loathsome, inflammatory racial slurs that the pond owner had made during the incident. The State then repeated those racial slurs in their closing statement. On appeal, the Supreme Court determined that the trial court had abused its discretion when it allowed the State's *646 highly prejudicial questioning regarding defendant's racist statements. The Supreme Court declared that "[t]he requisite element of simple assault is mens rea, not men's race." Tate, 784 So.2d at 215(¶ 29).
¶ 15. With Tate in mind, we now consider whether Lacy's testimony was inadmissible as unduly prejudicial under M.R.E. 403. The State maintains that the testimony, when considered in its total context, was critical to showing that Bell made the comment in order to earn Lacy's confidence so that he could convince her to secretly meet at her home. Unlike Tate, here the State did not conspicuously elicit prejudicial testimony regarding race in order to inject prejudice into the trial. Instead, the State credibly presented the evidence to show Bell's intent to commit the crime of embezzlement. The testimony was critical to establishing Lacy's credibility and for showing how Bell induced Lacy into conducting business outside the dealership. Furthermore, Lacy's limited testimony was certainly not comparable to the loathsome, inflammatory racial slurs elicited in Tate. Bell presents no relevant case law to support his assertion that the mere mention of race is unduly prejudicial. In reviewing the complete testimony in context, the probative value of the evidence outweighed any potential prejudice, and did not exhibit a tendency to move the jury to decide the case on an improper basis. The testimony showed the existence of a plan, helped to present the complete picture of Bell's conduct to the jury, and did not unduly prejudice the defendant. After a complete review of the trial testimony it is clear that the trial court did not abuse its discretion in admitting Lacy's relevant testimony. Therefore, this issue is without merit.

III. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GRANT BELL'S MOTIONS FOR A DIRECTED VERDICT, JUDGMENT NOTWITHSTANDING THE VERDICT, AND BY REFUSING TO GRANT BELL'S PEREMPTORY JURY INSTRUCTION.

STANDARD OF REVIEW
¶ 16. Motions for directed verdict and judgment notwithstanding the verdict, and a request for a peremptory instruction all challenge the legal sufficiency of the evidence presented at trial, and the standard of review for the denial of each is the same. Easter v. State, 878 So.2d 10, 21(¶ 36) (Miss.2004). The standard of review is as follows: all evidence supporting a guilty verdict is accepted as true, and the prosecution must be given the benefit of all reasonable inferences that can be reasonably drawn from the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993). Additionally, this Court is not at liberty to direct that the defendant be found not guilty unless viewed in the light most favorable to the verdict no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty. Conners v. State, 822 So.2d 290, 293(¶ 6) (Miss.Ct.App.2001). Finally, when determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the trial court has abused its discretion in failing to grant a new trial, and the Court finds the verdict is against the overwhelming weight of the evidence so that allowing the verdict to stand would sanction an unconscionable injustice. Montana v. State, 822 So.2d 954, 967-68(¶ 61) (Miss.2002).

DISCUSSION
¶ 17. Bell maintains that the State failed to prove by credible evidence the necessary elements of embezzlement under *647 Mississippi Code Annotated § 97-23-25. Section 97-23-25 states:
If any person shall fraudulently appropriate personal property or money which has been delivered to him on deposit... or on any other contract or trust by which he is bound to deliver or return the thing received or its proceeds, on conviction he shall be punished by imprisonment....
¶ 18. Specifically, Bell argues that there was no contract between Lacy and Bell because the only document that reflects an exchange of money was the Action Plan, and that the Action Plan is not used by the dealership as a contract. Furthermore, Bell argues that Lacy testified that she gave Bell the twelve hundred dollar deposit on April 4, 2001; however, according to the documentary evidence, there was no enforceable contract entered into until April 12, 2001.
¶ 19. Under Mississippi Code Annotated § 97-23-25 the State was required to prove beyond a reasonable doubt that: (1) a fiduciary relationship existed between Bell and the dealership; (2) money was paid by Lacy to Bell in the context of that fiduciary relationship; and (3) Bell converted said monies to his own use. The record reflects that Bell was employed as a salesman by the dealership during the period in question. The record further reflects that all of the vehicles at issue were owned by the dealership during the time period in question. The record also reflects that Lacy paid Bell $1,200 as a down payment on the purchase of one of the dealership's cars. Although testimony indicated that Bell admitted to Buddy Jones that he had received the deposit money from Lacy, Bell now denies that, and argues that there was no credible evidence of a contract. Although this is a criminal appeal and not an action in contract, we take a moment to consider whether the jury could have reasonably determined that a contract existed. Mississippi Code Annotated § 75-2-201 (Rev.2002) provides that:
... a contract for the sale of goods for the price of five hundred dollars ... or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon....
¶ 20. Exhibit S-3, the Action Plan, reflects that Lacy paid Bell twelve hundred dollars for a car on April 4, 2001. The document was signed by both Lacy and Bell. Although the document is ambiguous as to the exact car for which the deposit was made, based on these facts, the document arguably satisfies the requirements for a contract under Mississippi's Uniform Commercial Code. Furthermore, Jones testified that he never received the twelve hundred dollar deposit from Bell. Issues regarding the weight and credibility of the evidence are for the jury to resolve. Eakes v. State, 665 So.2d 852, 872 (Miss.1995).
¶ 21. Therefore, giving the State the benefit of all reasonable inferences that can be reasonably drawn from the evidence, the jury was reasonable in finding that a contract existed which obligated Bell to deliver $1,200 to the dealership. The evidence presented at trial created issues of fact to be resolved by the jury, and precluded the grant of Bell's peremptory instruction. Furthermore, the testimonial and documentary evidence satisfied the requirements of Mississippi Code Annotated § 97-23-25 and were sufficient to support a guilty verdict by a reasonable, hypothetical juror. Therefore, the trial *648 court was correct in denying Bell's motions for directed verdict and judgment notwithstanding the verdict, and request for a peremptory instruction. We find this issue to be without merit.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF LEFLORE COUNTY OF CONVICTION OF EMBEZZLEMENT AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEFLORE COUNTY.
BRIDGES AND LEE, P.JJ., IRVING, GRIFFIS AND BARNES, JJ., CONCUR.
ISHEE, J., DISSENTING:
¶ 23. I am unable to join in the majority's interpretation of the record testimony as it relates to M.R.E. 701. I, therefore, respectfully dissent.
¶ 24. Bell maintains on appeal that the trial court erred in admitting lay witness opinion testimony from Buddy Jones, the dealership owner, regarding Bell's handwriting. After a thorough review of the record, I am in agreement with Bell's argument that Jones's testimony should have been excluded because it is apparent that Jones did not have familiarity with Bell's handwriting prior to the incident.
¶ 25. The following exchange occurred during the direct examination of Jones, who had been called as a prosecution witness:
State: Based on your knowledge and experience and familiarity with the defendant and his handwriting, who[se] handwriting does that appear to be on the check?
Jones: When I compared it, and compared it back to some of the documents that Mr. Bell had signed, it appeared to be his handwriting to me.
¶ 26. It is well-settled that Mississippi law has long allowed "[a] witness, who has special knowledge through the course of official business or in any other way to experience a knowledge of a person's handwriting, to state his opinion as to whether a particular writing was made by that person." Wiggins v. State, 224 Miss. 414, 421, 80 So.2d 17, 19 (1955). However, there are procedural requirements which must be satisfied before a lay witness's opinion will be admissible as evidence at trial.
¶ 27. M.R.E. 701 provides for the admissibility of opinion testimony offered by a lay witness. The Official Comment to M.R.E. 701 states that a lay witness's opinion testimony is admissible when: (1) the opinion is based on first-hand knowledge or observation, and (2) when the opinion will be helpful to the fact-finder in resolving the issues.
¶ 28. Furthermore, M.R.E. 901 requires authentication or identification as a condition precedent to the admissibility of evidence at trial. Specifically, M.R.E. 901(b)(2) requires that a lay witness's opinion as to the genuineness of handwriting must be based on familiarity not acquired for purposes of litigation.
¶ 29. It is apparent from Mr. Jones's testimony that he did not gain his knowledge of Bell's handwriting through the requisite business experience or first-hand knowledge prior to litigation. The following exchange supports this conclusion:
State: Between September 11, 2000 and June, 2001, did you have the occasion to look [at] or witness the defendant's handwriting?
Jones: I've seen his handwriting on several occasions, especially when you know, this incident came upI looked at his handwriting. *649 I also looked and compared it to the handwriting on some of the documents.
¶ 30. According to the record testimony, the lay witness was comparing the handwriting in the documents in anticipation of the trial court proceedings. M.R.E. 901 allows for a lay witness to compare handwriting, which is the same function as an expert witness would perform. However, as previously stated, the lay witness's opinion must not be acquired for the purposes of litigation. The record clearly reflects that Jones stated that he had seen Bell's handwriting "on several occasions, especially when you know, this incident came up...." Furthermore, the ordering of his statements also makes it equally clear that it was the allegation of fraud which compelled Jones to compare Bell's handwriting to other documents.
¶ 31. Therefore, based on a thorough review of the record testimony, I conclude that the trial court improperly admitted Jones's lay witness opinion testimony, which was acquired for the specific purposes of litigation, contrary to the requirements of M.R.E. 701, and was not based on the prior familiarity required under M.R.E. 901.
KING, C.J., AND CHANDLER, J., JOIN THIS SEPARATE OPINION.