CHANDLER, J.,
for the Court.
¶ 1. On February 8, 2005, Ronnie Quaw-rells was indicted in the Circuit Court of Tunica County for armed robbery and conspiracy to commit armed robbery. After a jury trial, Quawrells was found guilty of conspiracy to commit armed robbery and was sentenced to five years in the custody of the Mississippi Department of Corrections. Quawrells appeals, alleging that the trial court should have granted his motion for a directed verdict and his motion for a judgment notwithstanding the verdict.
Finding no error, we affirm.
FACTS
¶ 2. On September 12, 2003, a cashier at Harrah’s Mardi Gras Casino and Hotel in Tunica County, Mississippi, was robbed at gunpoint. After a police investigation of the crime, Quawrells, Mario Clark, Jimmy West, and Latori Hillard were arrested. On February 8, 2005, Quawrells was indicted for armed robbery and conspiracy to commit armed robbery.
¶ 3. At trial, the State called four casino employees to testify. Murray Casey, the security manager, was at home the night of the robbery. Casey testified that he received a phone call which informed him that a robbery had occurred at the casino. Casey went to the casino and was present when security counted the money drawer. Casey testified that $42,000 was missing from the drawer.
¶ 4. Barbara Kuchenmeister, lead security at the casino, testified that she was on duty the night of the robbery. Kuchen-meister was in the hotel lobby watching the surveillance cameras when she saw a male standing at the cashier cage with a gun. Kuchenmeister testified that, as she walked toward the cashier cage, she saw two males run out the front entrance of the casino and get into a vehicle. Kuchen-meister described the two males and gave a description of the vehicle.
¶ 5. During Bobby Carmon’s testimony, the court admitted a surveillance video into evidence. Carmon was the surveillance supervisor at the casino. The video showed the individual with the gun and another individual standing close behind. Another segment of the video showed two men running out of the hotel lobby.
¶ 6. Greg Hollis was the cage cashier who was on duty the night of the robbery. Hollis testified that a male approached the cashier cage and handed him a note. At first, Hollis thought the note was a coupon, but then realized that the note was informing him that a robbery was taking place. Hollis stated that the man handed him a pillow case and pulled out a gun. Hollis described the man and identified him through photographs. Hollis stated that he did not recall seeing Quawrells.
¶ 7. Nathaniel Dawson, with the Tunica County Sheriffs Department, testified for the State. Dawson testified that he pulled over a vehicle which matched the description of the vehicle seen leaving the robbery. When Dawson stopped the vehicle, Clark was the only person in the car.
¶ 8. Shelia McKay, an investigator at the Tunica County Sheriffs Department, reviewed the surveillance tapes. McKay identified Hillard as the individual who was shown on the surveillance tape holding the gun.
¶ 9. Alan Thompson is employed with the Mississippi Department of Public Safety and the Mississippi Bureau of Investigation. Thompson testified that he was informed that the vehicle seen leaving the robbery was apprehended. Thompson stated that he went to the vehicle and *372 received consent from Clark to search the vehicle. Thompson found a revolver in the glove compartment. At the police station, Thompson interviewed Clark. Thompson also interviewed Quawrells and videotaped Quawrells’s statement. During Thompson’s testimony, the videotaped statement was introduced into evidence.
¶ 10. In the statement, Quawrells admitted that he went to the casino to “scope out” the robbery. Quawrells claimed that he did not think they were going to rob the casino until the next night. Quawrells told Thompson that he did not have a gun. Quawrells admitted that he saw Hillard with a pillow case in the restroom. He stated that, after the robbery, the four men left the casino and he was given $5,000, his portion of the money. In the video, Quawrells indicated that certain individuals had certain responsibilities in carrying out the robbery.
¶ 11. After Thompson testified, the State rested its case. Quawrells filed a motion for a directed verdict alleging that the State had failed to prove its case. The trial court denied the motion. Next, Quawrells, the only defense witness, testified.
¶ 12. According to Quawrells’s testimony, Clark and Hillard discussed the robbery for one or two days prior to the robbery. Quawrells stated that Clark and Hillard had been looking for guns prior to the robbery. Quawrells admitted that he knew Clark had a gun the day of the robbery.
¶ 13. Quawrells stated that he was under the impression that they were “scoping out” the casino so that they could rob the casino the next night. Quawrells claimed he did not think that they were serious. Quawrells testified that the individuals went to the restroom when they arrived at the casino. Contrary to his videotaped statement, Quawrells claimed that he had not known that Hillard had a pillow case when they were in the restroom. Quaw-rells stated that West told the men that he only had one pistol. Quawrells testified that Hillard was angry and said, “I’m gonna do it.” West said that he was going to the car and left the casino. Quawrells stayed in the casino. He claimed that he wanted to drink a couple of beers.
¶ 14. Quawrells admitted that he stood approximately eight or nine feet behind Hillard when the robbery was taking place. He also admitted that he could be seen in the background of the surveillance video. Quawrells claims that he was looking for a cocktail waitress so that he could get a drink. He also stated that he stood close by because he wanted to see what Hillard was going to do. Quawrells stated he ran out of the casino with Hillard after the robbery because he knew that the casino had video cameras and he knew that he would be seen with Hillard. Quawrells testified that, after the robbery, he and Hillard got into the car with Mario and West. Quawrells claimed that he was not the “lookout” man for the robbery. Quaw-rells testified that there was no reason to have a lookout man because there was nothing he could have done if he or Hillard had been shot.
¶ 15. Quawrells was found not guilty of armed robbery but was found guilty of conspiracy to commit armed robbery. He was sentenced to five years in the Mississippi Department of Corrections. Quaw-rells filed a motion for a judgment notwithstanding the verdict, which was denied by the trial court.
LAW AND ANALYSIS
I. WHETHER THE TRIAL COURT ERRED BY NOT GRANTING A DIRECTED VERDICT OR A JUDGMENT NOTWITHSTANDING THE VERDICT.
¶ 16. Quawrells filed motions for a directed verdict and for a JNOV. Both *373 motions were denied by the trial court. A motion for a directed verdict and motion for a JNOV both challenge the legal sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993). When the sufficiency of the evidence is challenged on appeal, we “properly review[ ] the ruling on the last occasion the challenge was made in the trial court.” Id. Quawrells last challenged the sufficiency of the evidence with his motion for a JNOV. On review of the denial of a motion for a JNOV, we accept all the evidence supporting the guilty verdict as true and give the State the benefit of all reasonable inferences that can be reasonably drawn from the evidence. Bell v. State, 910 So.2d 640, 646(16) (Miss.Ct.App.2005).
¶ 17. Quawrells contends that the evidence presented by the State’s witnesses did not prove that he participated in the planning of the robbery. He also alleges that there is no proof that the individuals were serious about actually robbing the casino. We find no merit in Quawrells’s contentions.
¶ 18. To constitute conspiracy, two or more persons must conspire to commit a crime. Miss.Code Ann. § 97-1-1 (Rev. 2003). Quawrells admitted that he was present when the individuals discussed robbing the casino, that he was close behind Hillard when the robbery occurred, and that he received a portion of the stolen money. Quawrells alleges that these acts were not sufficient to constitute conspiracy because he thought that the others were merely joking about robbing the casino and, even if they were serious, he did not intend to participate.
¶ 19. The jury is the final arbiter of a witness’s credibility. Morgan v. State, 681 So.2d 82, 93 (Miss.1996). Although Quawrells claims that he cannot be guilty of conspiracy to commit robbery because he did not think that the other conspirators were serious about committing the crime, there is evidence from which the jury could have found that Quawrells was aware that the robbery was going to occur. At trial, there was testimony that the co-conspirators were looking for guns, arranging a car to meet them after the robbery, and making plans to rob the casino. Quawrells admits knowing that West had a gun and Hillard had a pillow case. The most convincing evidence that Quawrells knew that the crime was going to occur is that Hillard told him in the restroom, “I’m gonna do it.” Quawrells watched Hillard get into the cashier line. Quawrells claims that he was standing close to the cashier cage because he wanted to see what Hil-lard was going to do. Quawrells saw Hil-lard hand the cashier the pillow case and pull out the gun. Quawrells did not make any attempt to stop the commission of the crime. Quawrells’ allegation was inconsistent with the other evidence. It is the jury’s responsibility to weigh the conflicting testimony. Williams v. State, 757 So.2d 953, 957(¶ 17) (Miss.1999). Viewing the evidence in the light most favorable to the State, the evidence was sufficient to support the verdict.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF TUNICA COUNTY OF CONVICTION OF CONSPIRACY TO COMMIT ARMED ROBBERY AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO TUNICA COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.