942 So.2d 322 (2006)
Alfred G. SHIRLEY a/k/a Alfred Glen Shirley, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2005-KA-00184-COA.
Court of Appeals of Mississippi.
November 14, 2006.
*325 John R. White, attorney for appellant.
Office of the Attorney General by John R. Henry, attorney for appellee.
Before LEE, P.J., CHANDLER and ROBERTS, JJ.
CHANDLER, J., for the Court.
¶ 1. Alfred G. Shirley was convicted on November 12, 2004, on one count of manslaughter by culpable negligence pursuant to Section 97-3-47 of the Mississippi Code Annotated (Rev.2006). The charges stemmed from an early morning brawl after Shirley and the decedent, Ronnie L. Roberts, had been to a local bar. Conflicting reports exist as to who the initial aggressor was, but it is undisputed that during the altercation, Shirley hit Roberts in the face and head several times with his fists, causing severe head trauma. Roberts died as a result of the wounds he suffered in the fight.
¶ 2. Shirley appeals, arguing:
I. WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND WHETHER THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE VERDICT
II. WHETHER THE TRIAL COURT ERRED IN NOT ALLOWING AN EYEWITNESS TO EXPRESS HIS OPINION AS TO WHETHER SHIRLEY WAS ACTING IN SELF-DEFENSE
III. WHETHER THE TRIAL COURT ERRED IN NOT ALLOWING SHIRLEY TO ADMIT THE POLICE RADIO LOGBOOK INTO EVIDENCE
IV. WHETHER THE TRIAL COURT ERRED IN ALLOWING JURY INSTRUCTIONS 8, 9, 11 AND 14
V. WHETHER THE TRIAL COURT ERRED IN NOT ALLOWING JURY INSTRUCTIONS D-1, D-7, D-9, OR D-10
¶ 3. Finding no error, we affirm.

FACTS OF THE CASE
¶ 4. Approximately six weeks prior to the night of Roberts' death, Roberts was working as a bouncer at a local club called "The Wagon Wheel" in Alcorn County, Mississippi. Roberts occasionally worked as a bouncer for the bar and Shirley was a regular customer. After Shirley exchanged words with a man on the dance floor, Roberts asked Shirley to leave the bar. Shirley refused to leave and the bartender, Billy Joe Crum, physically threw Shirley out of the establishment. After that night, Shirley began telling other people that he was going to "whip" Roberts the next time he saw him.
¶ 5. On the night of February 26, 2004, Roberts and Shirley again visited the bar, which by this time had changed its name to "Shooters." On this occasion, Roberts was at the bar with his girlfriend and not working as a bouncer. At some point during the night, Shirley complained to a waitress that Roberts had followed Shirley into the restroom. According to testimony, Shirley told the waitress that if Roberts persisted in bothering him, Shirley would "bust him upside his head."
¶ 6. After the bar closed at midnight, several of the patrons, including Roberts and Shirley, gathered at a nearby omelet house. Conflicting testimony accounts for what happened at the omelet house, but it is uncontroverted that at some point, a fight broke out in the parking lot between Roberts and Shirley.
¶ 7. Shirley claims that Roberts was the first aggressor by approaching Shirley's vehicle and yelling at him. Shirley argues *326 that he hit Roberts in self-defense, striking Roberts in the head four times. Roberts suffered a large cut above his left eye which was swollen shut, a swollen and bloodied face, and numerous lacerations to his nose and forehead. Shirley walked away from the brawl with a broken hand.
¶ 8. Shirley left the scene of the fight and drove to the Alcorn County Sheriff's Office where he reported the incident. Meanwhile, Roberts was picked up by an ambulance and taken to Magnolia Regional Health Center in Corinth, Mississippi. He was declared dead at 1:45 a.m. on February 27, 2004.
¶ 9. While in police custody, Shirley registered .015 on an Intoxilyzer at 2:42 a.m. on the morning of February 27, 2004. Photographic evidence from that night was presented at trial which showed Shirley's right hand to be bloodied and swollen, and other photographs were admitted showing the crime scene. Evidence was also presented that Roberts had a high percentage of alcohol in his system, ranging from 0.12 to 0.15, depending on which blood test was used. Testimony was given that Shirley had a reputation for picking fights. An eyewitness to the crime, Michael Nelson, testified that he saw Roberts approach Shirley's vehicle while yelling at Shirley, but did not see Roberts raise his hand against Shirley or attempt to protect himself in any way from Shirley's blows. Nelson stated that he heard the first punch and when he looked up, Roberts was on the ground with Shirley standing over him, administering several blows.
¶ 10. The coroner testified that Roberts died of subdural hemorrhaging and major bruising to the brain. The base of Roberts's skull was fractured, along with the bone around his left eye. The coroner stated that death was the result of cranial cerebral trauma, secondary to blunt force trauma. Shirley stated that he only hit Roberts three or four times, but the medical examiner gave conflicting testimony, stating that the evidence showed that Roberts suffered numerous blows, approximately eight to twelve in succession.

LAW AND ANALYSIS
I. WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND WHETHER THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE VERDICT
A. Weight of the Evidence
¶ 11. Shirley argues that the verdict is against the overwhelming weight of the evidence. In determining whether a jury verdict is against the weight of the evidence, the court "must accept as true the evidence presented as supportive of the verdict, and we will disturb a jury verdict only when convinced that the circuit court has abused its discretion in failing to grant a new trial or if the final result will result in an unconscionable injustice." Ford v. State, 753 So.2d 489, 490(¶ 8) (Miss.Ct.App.1999).
¶ 12. On a motion for new trial, "The court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." Amiker v. Drugs For Less, Inc., 796 So.2d 942, 947(¶ 18) (Miss.2000). However, the evidence should be weighed in the light most favorable to the verdict. Herring v. State, 691 So.2d 948, 957 (Miss.1997).
¶ 13. As a limited "thirteenth juror" in this case, we cannot hold that an unconscionable injustice resulted from this jury's rendering of a guilty verdict. Shirley testified *327 that he struck Roberts in self-defense. The overwhelming weight of the evidence suggests otherwise. Even if Shirley did initially defend himself against a perceived attack from Roberts, the fear for his own safety would necessarily have ended once Roberts fell to the ground and was obviously incapacitated. Yet, Shirley continued to beat Roberts well after any initial threat had passed. Therefore, Shirley's argument that the verdict was against the overwhelming weight of the evidence is without merit.
B. Applicability of the Weathersby Rule
¶ 14. Shirley also argues that the State did not provide sufficient evidence to prove beyond a reasonable doubt that he committed manslaughter. Relying solely on Nelson's and Shirley's own testimony, Shirley states that the only eyewitness testimony offered showed that he acted in self-defense. Shirley cites the Weathersby rule:
[W]here a defendant or the defendant's witnesses are the only eyewitnesses to a homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the State, or by the physical facts or by the facts of common knowledge.
Weathersby v. State, 165 Miss. 207, 209, 147 So. 481, 482 (1933). It is important to note that, "Defendants have often cited and argued application of the Weathersby Rule, but seldom have they prevailed. Usually, a factual issue is presented which requires submission of the case to the jury." Buchanan v. State, 567 So.2d 194, 196 (Miss.1990).
¶ 15. Shirley's account of what happened that night sharply contrasted with the evidence presented by the State. Shirley claims he only hit Roberts four times, but the pathologist stated that the injuries Roberts suffered indicated he was severely beaten and endured several blows. Shirley also stated that he only hit Roberts in self-defense, but evidence was presented that Roberts never struck Shirley, and conflicting testimony exists as to who was the first aggressor.
¶ 16. The State offered the testimony of Nelson, an eyewitness to the altercation, along with statements from an officer attending the scene of the crime, the pathologist who conducted Roberts's autopsy, and numerous acquaintances of Shirley's who commented that Shirley had a reputation as an instigator of fights. The State's witnesses sharply contradicted Shirley's testimony, and even Nelson's view of the events did not conclusively show that Shirley acted in self-defense. "[Weathersby] has no application where the defendant's version is patently unreasonable, or contradicted by physical facts." Taylor v. State, 795 So.2d 512, 517(¶ 20) (Miss.2001). Therefore, these contradictions were sufficient to take this case out of the purview of the Weathersby rule, and we find this argument to be without merit.
C. Directed Verdict and Sufficiency of the Evidence
¶ 17. Shirley contends that he should have been granted a directed verdict because the State did not prove beyond a reasonable doubt a case for manslaughter. We disagree.
¶ 18. A motion for a directed verdict challenges the legal sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993). The standard of review is that "all evidence supporting the guilty verdict is accepted as true and the State must be given the benefit of all reasonable inferences that can be reasonably drawn from the evidence." Bell v. State, 910 So.2d 640, 646(¶ 16) (Miss.Ct. App.2005). The verdict should not be *328 overturned so long as there is "credible evidence in the record from which the jury could have found or reasonably inferred each element of the offense." Id. In addition, the evidence must be examined in the light most favorable to the verdict. Edwards v. State, 615 So.2d 590, 594 (Miss. 1993).
¶ 19. In the present case, factual issues arose from the evidence and testimony presented, such as who was the initial aggressor in the argument and whether or not Shirley exceeded any justifiable means for self-defense once Roberts was knocked to the ground.
¶ 20. Mississippi Code Annotated Section 97-3-47 (Rev.2006) provides, "Every other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, not provided for in this title, shall be manslaughter." In Smith v. State, 197 Miss. 802, 814-15, 20 So.2d 701, 704-05 (1945), the Court opined that, "[N]egligence, to become criminal, must necessarily be reckless or wanton and of such a character as to show an utter disregard of the safety of others under circumstances likely to cause injuries."
¶ 21. Based on the record before us, the evidence was sufficient to allow the case to go to the jury. Nelson testified that he saw Roberts exit the omelet house, yell at Shirley across the parking lot, and then Shirley and Roberts began a verbal confrontation. Nelson told Shirley to leave, saying that it was not "worth it" to fight Roberts, but Shirley would not back down. Nelson got into his vehicle, and thereafter heard the sound of a fist hitting something. When he looked up, Nelson saw Shirley standing over Roberts, hitting him. At no time did Nelson see Roberts raise a fist, nor did he see Roberts attempt to defend himself against Shirley's blows.
¶ 22. Likewise, the pathologist testified that Roberts did not have any markings on his hands to indicate that he tried to defend himself or that he ever hit Shirley. Photographic evidence showed that Shirley had a swollen and bloodied right hand, and Shirley admitted to punching Roberts several times. Other witnesses testified that Shirley was prone to fights, and had been talking about getting into a fight with Roberts for weeks. Considering the evidence in a light most favorable to the State, we find that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
II. WHETHER THE TRIAL COURT ERRED IN NOT ALLOWING AN EYEWITNESS TO EXPRESS HIS OPINION AS TO WHETHER SHIRLEY WAS ACTING IN SELF-DEFENSE
¶ 23. Shirley argues that he was unable on direct examination of his friend, Michael Nelson, to ask Nelson's opinion as to Shirley acting in self-defense. Under Mississippi Rules of Evidence 701, a lay witness's opinion is admissible only if it is "rationally based on the witness's perception and is helpful to a clear understanding of his testimony or of a fact in issue." Newsom v. State, 629 So.2d 611, 614 (Miss. 1993). The relevant portion of the trial record is as follows:
MR. WHITE [Defense Counsel]: From everything you saw that night, in your opinion, who was the aggressor in this incident?
MR. NELSON: Ronnie [Roberts]. . . . .
MR. WHITE: And from everything that you saw that Glen Shirley did, was that self-defense?
¶ 24. The State objected to the question based on speculation and the court sustained. The court told White he could ask about that issue, but in a different manner of questioning. The questioning proceeded:

*329 MR. WHITE: In your opinion . . . from everything you saw that night, did Glen Shirley do anything that you would tell the jury that was aggressive in any form or fashion?
MR. NELSON: No sir, he didn't.
MR. WHITE: Everything that he did that related to Mr. Roberts, in your opinion, was to defend himself?
¶ 25. The State objected to this question based on speculation and the court sustained it. White proceeded further:
MR. WHITE: In your opinion, based on what you saw that night, would you have done anything different than Mr. Shirley did?
MR. NELSON: No sir, I wouldn't have.
¶ 26. In a further line of questioning, White asked Nelson if he thought Shirley was scared. Again, the State objected but the court overruled the objection, allowing Nelson to answer. Nelson responded by saying that he did think Shirley may have been "a little scared." Shirley argues that he should have been allowed to ask Nelson his opinion regarding whether Shirley acted in self-defense. Shirley states that this determination would have been helpful to the jury because Nelson was in a good position to see Roberts's action towards Shirley.
¶ 27. Questions which would merely allow a witness to tell the jury what result to reach are not permitted. Owen v. Kerr-McGee Corp., 698 F.2d 236, 240 (5th Cir.1983). Further, the admissibility of evidence is largely within the discretion of the trial court and reversal may be found only where that discretion has been abused. Weaver v. State, 713 So.2d 860, 865(¶ 31) (Miss.1997). If the Court finds an erroneous exclusion of evidence, we will reverse the ruling only if the error adversely affected a substantial right of a party. Gibson v. Wright, 870 So.2d 1250, 1258(¶ 28) (Miss.Ct.App.2004). Under 704 of the Mississippi Rules of Evidence, opinion testimony is not objectionable merely because it embraces an ultimate issue to be decided by a trier of fact. The comment to Rule 704 provides that such questions which relate to ultimate issues of fact are allowed if they are "helpful to a determination of the case."
¶ 28. The trial court did allow questions pertaining to the ultimate issue of Shirley's self-defense theory, but the court required that they be made in a manner more helpful to the jury. Nelson testified that he did not see all of the events that led up to Roberts falling on the ground. Nelson heard a fist hitting something and when he looked up, he saw Shirley bending over and punching Roberts. Therefore, Nelson was not in the best view to assess whether or not Shirley began his attack based on self-defense. However, Nelson was able to testify that he did think that Shirley was somewhat scared before the attack, and that Nelson would have responded in the same manner as Shirley did. Both of those responses could have been helpful to the jury in determining whether or not Shirley was under an imminent fear of Roberts. Thus, we find that the court did not abuse its discretion in disallowing certain questions, and accordingly find this argument to be without merit.
III. WHETHER THE TRIAL COURT ERRED IN NOT ALLOWING SHIRLEY TO ADMIT THE POLICE RADIO LOGBOOK INTO EVIDENCE
¶ 29. Shirley next contends that he should have been able to enter into evidence an entry from a police logbook, which would have shown that he was stopped by the police on February 5, 2004. At trial, the State objected because Shirley failed to provide reciprocal discovery and had not informed the State of his intention to introduce a portion of the logbook. The *330 objection was sustained and the logbook was excluded from evidence. Shirley argues this ruling was in error.
¶ 30. During Shirley's case-in-chief, Shirley called one of the State's witnesses, Officer Ralph Dance, to the witness stand. Shirley asked Officer Dance about a police stop which occurred three weeks before the night in question. Officer Dance testified as to what the radio logbook contained. He explained that Shirley's vehicle was stopped twenty-two days before the event in question in an area close to Bad Habitz, a club that Shirley frequented.
¶ 31. Counsel for Shirley then attempted to enter that page of the logbook into evidence. The State objected because Shirley did not provide it with adequate discovery before trial, or with supplemental discovery once the trial had begun. The court excluded the logbook pursuant to Rule 9.04 E. of the Mississippi Uniform Circuit and County Court Rules, which states that a party shall "promptly notify the other party or the other party's attorney of the existence of such additional matter." However, the judge did allow the logbook to come in for identification purposes only.
¶ 32. It is uncontroverted that the defense was able to present testimony to the jury reflecting the contents of the logbook. Without objection from the State, Officer Dance explained that Shirley was stopped prior to the night in question. The only piece of evidence not admitted was the logbook entry itself, which may have been confusing to a jury given that without Officer Dance's testimony, the jury may not have understood the coding used for traffic stops, or have known that the license plate entered into the log matched that of Shirley's vehicle. Therefore, any error in handling the issue of a possible discovery violation is deemed to be harmless.
IV. WHETHER THE TRIAL COURT ERRED IN ALLOWING JURY INSTRUCTIONS 8, 9, 11 AND 14
¶ 33. Shirley argues that by allowing certain jury instructions, the jury had inadequate guidance to reach a fair verdict. When reviewing allegedly erroneous instructions, the court reviews the instructions as a whole to determine whether the jury was properly instructed. Morgan v. State, 741 So.2d 246, 253(¶ 16) (Miss. 1999). Jury instructions should not be reviewed in isolation. Gollott v. State, 672 So.2d 744, 752 (Miss.1996). Thus, error will not be found if one instruction lacks an element but that element is found in another instruction given by the court. Pitts v. State, 832 So.2d 1281, 1285-86(¶ 12) (Miss.2002). Further, the trial court has considerable discretion regarding the form and substance of jury instructions, and we will not deem error absent an abuse of discretion. Higgins v. State, 725 So.2d 220, 223(¶ 15) (Miss.1998).
A. Jury Instruction No. 8: Shifting the Burden of Proof for Self-Defense
¶ 34. Shirley argues that jury instruction No. 8 impermissibly shifted the burden of proof for self-defense onto the defendant. Shirley claims that the instruction provides that, "Mr. Shirley must show that he had reasonable grounds to act as he did." However, the actual wording of the instruction states:
[T]o make a killing justifiable on the grounds of self-defense, the danger to . . . Shirley . . . must be either actual, present and urgent, or . . . Shirley, must have reasonable grounds to apprehend a design on the part of the victim . . . Roberts, to kill him or to do him some great bodily harm, and in addition to this he must have reasonable grounds to apprehend that there is imminent danger *331 of such design being accomplished. It is for the Jury to determine the reasonableness of the ground upon which the Defendant, Alfred G. Shirley, acted.
The instruction expounds a theory of self-defense, but the burden of proof required is not included in this particular instruction. Jury instruction No. 2 properly informed the jury that the State had the burden of proof beyond a reasonable doubt of not only Shirley's guilt, but also that Shirley did not act in self-defense. Therefore, we find this argument to be without merit.
B. Jury Instruction No. 9: Self-Defense and intent to kill
¶ 35. Shirley argues that jury instruction No. 9 was impermissible because it instructed the jury to find whether or not Shirley "believed it was necessary to kill." Shirley contends that there was never an allegation that he intended to kill Roberts, nor that he believed it was necessary to do so.
¶ 36. Upon reading the entire instruction, the jury was not asked to determine whether Shirley intended to kill Roberts. Jury instruction No. 9 states in relevant part:
[I]n deciding upon the guilt or innocence of the Defendant . . . they should determine what an ordinary and reasonable man might have fairly inferred from all the facts and circumstances by which the evidence shows that the Defendant was at the time surrounded. . . . The Jury must place themselves . . . in the Defendant's place and then judge whether the danger was apparent, or should have been considered apparent by an ordinary man of judgment and prudence in like condition. . . . The question is, whether or not the danger was apparently so imminent and present at the time of the killing that a reasonable and prudent man situated as was the Defendant . . . would believe it was necessary to kill in order to avoid the loss of life or to prevent great bodily harm.
¶ 37. The language in the jury instruction properly tracks what is set forth under the statute. Further, jury instruction No. 5 clearly instructed that the charge is culpable negligence, that Roberts was killed "without malice." The jury was not instructed to determine Shirley's intent to kill. Accordingly, this argument is without merit.
C. Jury Instructions No. 11 and No. 14: Using abstract principles of law without applying to facts of case
¶ 38. Shirley further contends that jury instructions No. 11 and No. 14 improperly used abstract principles of law without applying any facts of the case at hand. Shirley cites the case of Harkins v. Paschall, 348 So.2d 1019, 1023 (Miss.1977), alleging that if abstract principles of law are not applied to the specific facts of the case, the instruction should not be given.
¶ 39. However, the language in Harkins states, "the use of an abstract principle of law from one case, without applying it to the specific facts of the case under consideration, may invite reversible error." Id. (emphasis added). In Harkins, the court found no reversible error because, viewing the jury instructions as a whole, the jury was adequately instructed as to the law and applicable facts. Id.
¶ 40. Further, no statement of issue based on the giving of an instruction to the jury will be considered on appeal unless specific objection was made to the instruction in the trial court stating the particular ground or grounds for such objection. Watson v. State, 483 So.2d 1326, 1329 (Miss.1986). The basis for Shirley's objection to No. 11 at trial was that he preferred his own instruction D-4 to the *332 proposed P-11 (entered as No. 11 in the record). Shirley did not object to No. 11 based on abstraction. Thus, the issue regarding No. 11 is procedurally barred.
¶ 41. Shirley also objects to jury instruction No. 14 by stating that it improperly omits reference to the specific facts of the present case. Jury instruction No. 14 states, "[a] Defendant who claims self-defense to his actions may not use excessive force to repel an attack, but may use only such force as is reasonably necessary under the circumstances." We find this argument to be without merit because jury instruction Nos. 5, 8, 9, 10, 12, and 13 all provide adequate facts for the jury to decide whether or not Shirley acted in self-defense or whether the force used was excessive.
V. WHETHER THE TRIAL COURT ERRED IN NOT ALLOWING JURY INSTRUCTIONS D-1, D-7, D-9, OR D-10
¶ 42. Shirley argues that the court erred in not allowing some of his proposed jury instructions. Our supreme court has held that, "A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." Heidel v. State, 587 So.2d 835, 842 (Miss.1991) (citations omitted).
A. Jury Instruction D-1: Meaning of Reasonable Doubt
¶ 43. Shirley argues that the rejected jury instruction D-1 provides a more thorough explanation of "reasonable doubt." D-1 states in relevant part, "There is always a reasonable doubt of the defendant's guilt when the evidence simply makes it probable that the defendant is guilty. Mere probability of guilt will never warrant you to convict the defendant." This Court has stated that "reasonable doubt defines itself; it therefore needs no definition by the court." Wells v. State, 913 So.2d 1053, 1061(¶ 27) (Miss.Ct.App. 2005). Therefore, we can find no abuse of discretion in the court's denying Shirley's proposed jury instruction D-1.
B. Jury Instruction D-7: Self-Defense Theory
¶ 44. Shirley next contends that his D-7 instruction regarding self-defense is better than the instruction allowed (P-7). Proposed jury instruction D-7 states in relevant part:
[A]nd if you believe that under those circumstances it reasonably appeared to the defendant on that occasion, and if you believe that under those circumstances it reasonably appeared to Alfred Glen Shirley, at the instant that the deceased raised his fist to strike him, that the defendant then and there had reasonable ground to apprehend a design on the part of . . . Roberts to kill the defendant.
¶ 45. Jury instruction P-7 (allowed as No. 9) asks the jury to determine self-defense as a reasonable person would if placed in Shirley's situation. We conclude that the trial court was within its discretion in finding that D-7 was a better statement of the law.
C. Jury Instruction D-9: Weathersby Rule
¶ 46. Jury instruction D-9 concerns the Weathersby rule that if eyewitness testimony is uncontroverted by other evidence or common sense, then the jury must take the eyewitness testimony as true. Weathersby, 165 Miss. at 209, 147 So. 481. Ample evidence in this case was *333 presented to show that Roberts died as a result of Shirley's fists. Shirley's theory of self-defense was contradicted by other testimony such as from the forensic pathologist and other witnesses from the night in question. Shirley's testimony was negated by other evidence; thus, the Weathersby rule is inapplicable.
D. Jury Instruction D-10: Elements of excusable homicide
¶ 47. Jury instruction D-10 quotes Section 97-3-17(c) of the Mississippi Code Annotated (Rev.2006), which instructs on excusable homicide (providing for a theory of self-defense). Shirley claims that the rejected D-10 is more properly worded than the allowed No. 11. We find this argument to be without merit, because precedent holds that when giving a jury instruction on excusable homicide, the full text of the statute should be included. Scott v. State, 446 So.2d 580, 583 (Miss.1984).
¶ 48. D-10 merely lists self-defense as the only excuse the jury can find. However, Section 97-3-17 contains other elements. The full text of Section 97-3-17 is as follows:
The killing of any human being by the act, procurement, or omission of another shall be excusable:
(a) When committed by accident and misfortune in doing any lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent;
(b) When committed by accident and misfortune, in the heat of passion, upon any sudden and sufficient provocation;
(c) When committed upon any sudden combat, without undue advantage being taken, and without any dangerous weapon being used, and not done in a cruel or unusual manner.
Our supreme court found in Scott v. State, 446 So.2d at 583, that not including all of the elements of the statute was reversible error. Therefore, we can find no error in denying D-10 and substituting the proper jury instruction of P-11.
¶ 49. THE JUDGMENT OF THE CIRCUIT COURT OF ALCORN COUNTY OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH EIGHT YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION, AND TO PAY A FINE OF $4,000 AND $4,500 TO THE MISSISSIPPI CRIME VICTIMS' COMPENSATION FUND IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ALCORN COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.