# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00627-COA

**BILLY SHANNELL NAILER, JR. A/K/A BILLY NAILER A/K/A BILLY S. NAILER, JR. A/K/A BILLY NAILER, JR.**                    APPELLANT

v.

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/02/2023 |
| TRIAL JUDGE: | HON. RANDI PERESICH MUELLER |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN T. COOK BILLY SHANNELL NAILER JR. (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: CASEY B. FARMER |
| DISTRICT ATTORNEY: | WILLIAM CROSBY PARKER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/10/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., McDONALD AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1.     Billy Shannell Nailer Jr. was convicted of aggravated assault in the Harrison County Circuit Court and sentenced to serve twenty years in the custody of the Mississippi Department of Corrections (MDOC) as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev. 2020) for firing a crossbow into a boat occupied by Tyler and Tanner Feeney. Nailer appeals.

## FACTS AND PROCEDURAL HISTORY

¶2.     On June 14, 2020, Tyler Feeney and his brother Tanner were in their cousin's boat fishing on the Biloxi River. After fishing all day, at about 9 or 10 p.m., they headed in the boat to their grandmother's house to check on her and pick up some kayaks. With Tanner driving the boat, they proceeded north up the river until they came upon some debris in the river in the Snug Harbor and Moon Lake area. At that point, they turned around to head south. Tyler knew that Nailer lived in the Snug Harbor and Moon Lake area because Tyler grew up on the river and said "[W]e kind of know everybody." Just before they turned around, Tyler noticed Nailer and a woman on Nailer's porch. Tyler testified that he did not recognize the woman but could clearly see that it was Nailer on the porch standing under a porch light. Tyler testified that the distance between the boat and Nailer was around fifty yards. Although Tyler originally thought Nailer was holding a slingshot, he later realized that Nailer was holding a crossbow.

¶3.     When the Feeneys turned south at Snug Harbor, a crossbow bolt pierced the passenger boat seat. Tyler testified that the bolt hitting the seat sounded as though it had been hit with a rock. The brothers did not know what had hit them at first. After Tyler heard the sound, he looked back at Nailer's residence and saw Nailer standing under the porch light and heard a woman yelling at Nailer to "put it down, come back inside." Nailer was holding the crossbow. Tyler testified that the lights went out, and he and Tanner "took off down the river." When Tyler realized they had been shot by a crossbow, they went back to Tyler's house and called the police.

¶4.     Tyler and Tanner were interviewed by police that night. On June 24, 2020, the

brothers went to the Biloxi Police Department where they were presented with a photo lineup. Tyler identified Nailer in the lineup.[1]

¶5. Investigator Mike Davis testified that while executing a search warrant at Nailer's home, Davis recovered a compound bow with arrows and a crossbow with crossbow bolts or arrows. Davis said that the compound bow was located on the back porch hanging up in the bar area on a hook. The compound bow had five arrows in the quiver. The crossbow was found in the master bedroom and had two bolts or arrows in the quiver and one "in the rest," which meant the crossbow was loaded. Two other arrow or crossbow bolts were found on an ironing board in the master bedroom closet. According to Davis, the bolts found in Nailer's home were the same make, model, manufacturer date stamp, and description as the bolt removed from the boat occupied by the Feeneys.

¶6. Nailer was indicted and charged with aggravated assault. The indictment was later amended to charge Nailer as a habitual offender pursuant to section 99-19-81. The case was tried on September 16, 2022. At the close of the State's case-in-chief, Nailer moved for a directed verdict, which was denied. Nailer did not call any witnesses in his defense. The jury returned a guilty verdict, and Nailer was sentenced to serve twenty years in the custody of the MDOC. Nailer filed an amended motion for judgment notwithstanding the verdict or a new trial. After the trial court denied his post-trial motion, Nailer filed a notice of appeal.

**ANALYSIS**

---

[1] Tanner identified someone other than Nailer in the lineup. At trial, he testified that he did not get a very good look at Nailer since he was driving the boat, and "his focus was on the river."

3

¶7. Nailer's appellate counsel raises three issues on appeal, and Nailer raises one additional issue in a pro se appellate brief. We will address the issues below.

## I. Whether the trial court erred by denying Nailer's requested instruction on simple assault as a lesser-included offense to aggravated assault.

¶8. The standard of review for the refusal of a lesser-included offense instruction is de novo. *Green v. State*, 353 So. 3d 516, 520 (¶16) (Miss. Ct. App. 2023). In *Curtis v. State*, 298 So. 3d 446, 451 (¶11) (Miss. Ct. App. 2020), we explained:

> A defendant has a right to a lesser-included-offense instruction if there is some evidence from which a reasonable juror could find him both not guilty of the indicted offense and guilty of the lesser-included offense. *Gilmore v. State*, 119 So. 3d 278, 286 (¶13) (Miss. 2013). However, "the jury should not be presented with a lesser-included-offense instruction unless the record provides an evidentiary basis for the instruction." *Franklin v. State*, 136 So. 3d 1021, 1026 (¶11) (Miss. 2014) (quotation marks omitted). Therefore, "lesser-included-offense instructions should not be granted on mere speculation. *Id*.

¶9. Nailer complains of the trial court's refusal to grant his Instruction D-11, which would have told the jury:

> The Court instructs you the Jury that if you find that the State did not prove any one or more of the elements of the crime charged, Aggravated Assault, then you must find **BILLY SHANNELL NAILER, JR.** not guilty of that crime. You will then proceed with your deliberations to decide whether the State has proved beyond a reasonable doubt all of the elements of the lesser crime of **Simple Assault**.
>
> If you find beyond a reasonable doubt from the evidence in this case that:
>
> > 1. On or about June 14, 2020, in Harrison County, Mississippi, First Judicial District;
> > 2. The Defendant, Billy Shannell Nailer, Jr.;
> > 3. Attempted to cause or purposely, knowingly

> or recklessly caused;
> 4. Bodily injury to Tyler Feeney.
>
> then you shall find BILLY SHANNELL NAILER, JR. guilty
> of Simple Assault.
>
> If the State did not prove any one of the above listed elements beyond a
> reasonable doubt, then you shall find BILLY SHANNELL NAILER, JR.
> not guilty of Simple Assault

Nailer argues that he is entitled to a new trial because he was denied "his constitutional right to assert his theory of defense" when the trial court refused his instruction. He contends that in "refusing the instruction the trial court presumed an element of the offense," specifically that a crossbow was a deadly weapon.

¶10.    Mississippi Code Annotated section 97-3-7(2)(a) (Rev. 2020) defines aggravated assault:

> A person is guilty of aggravated assault if he or she (i) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; (ii) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; . . . he or she shall be punished by imprisonment in the county jail for not more than one (1) year or sentenced to the custody of the Department of Corrections for not more than twenty (20) years.

Mississippi Code Annotated section 97-3-7(1)(a) defines simple assault:

> A person is guilty of simple assault if he or she (i) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; (ii) negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; or (iii) attempts by physical menace to put another in fear of imminent serious bodily harm; and, upon conviction, he or she shall be punished by a fine of not more than Five Hundred Dollars ($500.00) or by imprisonment in the county jail for not more than six (6) months, or both.

5

¶11. Nailer's argument to the trial court in support of his instruction was that under section 97-3-7(1)(a)(i), there was proof that Nailer attempted to cause bodily injury to another person. Neither in the instruction, nor in his argument in support of the instruction, did Nailer specifically address how the attempt was made. Nailer never argued before the trial court that the crossbow, as used in this case, was not a deadly weapon. Therefore, his argument is barred on appeal. We will not hold the trial court in error for an issue never presented to it for consideration. *Bias v. State*, 245 So. 3d 534, 538 (¶13) (Miss. Ct. App. 2017).

¶12. Notwithstanding the procedural bar, Nailer's argument is without merit. The trial court instructed the jury on the term "deadly weapon" as follows:

> The term "deadly weapon," as that has been used from time to time in these instructions, means an object, article, or means which, when used as a weapon under the existing circumstances is reasonably capable or likely to produce death or serious bodily harm to another person.

The evidence showed that the crossbow was fired at the boat, which was about fifty yards away. Pictures and testimony showed that the arrow, or "bolt," went through the passenger seat of the boat. It is clear from the pictures admitted, had either brother been sitting in that seat, the "bolt" would have caused him bodily injury, if not serious bodily injury. Pursuant to *Curtis*, we find that no "reasonable juror could find [Nailer] both not guilty of the indicted offense and guilty of the lesser-included offense." *Curtis*, 298 So. 3d at 451 (¶11). The trial court did not err in refusing Instruction D-11.

**II.     Whether the State presented sufficient evidence to convict Nailer of aggravated assault.**

¶13. Nailer challenged the sufficiency of the evidence in his motion for a directed verdict

6

and again in his amended post-trial motion. Both motions were denied by the trial court. Nailer challenges the sufficiency of the evidence leading to his conviction and sentence, arguing that the State failed to prove beyond a reasonable doubt "that Nailer intended to cause bodily harm when he fired a crossbow into the dark Biloxi River." He argues on appeal that firing the bolt from only a short distance away and hitting an empty seat was proof that he did not intend to injure anyone.

¶14.    We explained our analysis of the sufficiency of evidence in *Jones v. State*, 380 So. 3d 974, 980-81 (¶¶13-14) (Miss. Ct. App. 2024):

> We review a challenge to "the legal sufficiency of the evidence" de novo, but the evidence must be "viewed in a light most favorable to the State." *Johnson v. State*, 904 So. 2d 162, 166 (¶7) (Miss. 2005). This means that "all credible evidence supporting a defendant's guilt should be accepted as true, and all favorable inferences drawn from the evidence must be reconciled in the prosecution's favor." *Id*. "We determine if any rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Williams v. State*, 285 So. 3d 156, 159 (¶11) (Miss. 2019). "We are not required to decide—and in fact we must refrain from deciding—whether we think the State proved the elements." *Poole v. State*, 46 So. 3d 290, 293-94 (¶20) (Miss. 2010). Rather, we must affirm the conviction as long as there is sufficient evidence for a rational juror to find that the State proved all the elements of the offense. *Id*.

In *Shaw v. State*, 139 So. 3d 79, 84 (¶13) (Miss. Ct. App. 2013), we explained:

> Whether a person intended to commit an act is "a question of fact to be gleaned by the jury from the facts shown in the case." [*Johnson v. State*, 44 So. 3d 400, 408 (¶24) (Miss. Ct. App. 2010)]. "The presumption of the law is that each person intends the natural consequences of his actions." *Staten v. State*, 813 So. 2d 775, 777 (¶8) (Miss. Ct. App. 2002) (citing *Hydrick v. State*, 246 Miss. 448, 450-451, 150 So. 2d 423, 424 (1963)). "The State must be given the benefit of all reasonable inferences that may be drawn from the evidence." *McBride v. State*, 78 So. 3d 359, 361 (¶7) (Miss. Ct. App. 2011) (citing *Christian v. State*, 859 So. 2d 1068, 1071 (¶12) (Miss. Ct. App. 2003)). "[E]ven 'slim' evidence can be used to uphold a guilty verdict so long as it can

7

reasonably be inferred to support such a finding." *Sanders v. State*, 949 So. 2d 92, 95 (¶5) (Miss. Ct. App. 2006) (citation omitted).

*See also Ricks v. State*, 332 So. 3d 377, 381 (¶12) (Miss. Ct. App. 2021) ("A determination of whether a person intended to commit an act is a question that should be left for the jury to decide.").

¶15.    Drawing all favorable inferences from the evidence in the prosecution's favor, we find that there was legally sufficient evidence for a reasonable juror to find beyond a reasonable doubt that Nailer intended to cause bodily harm when he fired the crossbow into the boat occupied by the Feeneys. (See Exhibit 7 attached as Appendix).

> **III.    Whether Instructions S-2 and S-5 impermissibly commented on the weight of the evidence, were argumentative, and deprived Nailer of a fair and objective consideration of the evidence by the jury.**

¶16.    Instruction S-2 provided:

> The Court instructs the Jury that intent is an emotional operation of the mind, and it is usually shown by acts and declarations of the defendant coupled with facts and circumstances surrounding him at the time. The Defendant's intention is manifested largely by the things he does.

During the jury instruction conference, the State tendered Instruction S-2 and cited a case to support giving the instruction. The trial court asked if there was any objection and stated: "It does appear to be a correct statement of the law, unless there's something else you can enlighten me with."  Nailer's counsel stated:

> We, of course, would object to it, Your Honor. The instruction, I see where it was taken and from which case it was taken. I have that case in front of me and I've reviewed it.

The trial court asked counsel if he could be more specific. Nailer's counsel replied that he

had nothing further and failed to provide the trial court with any specific reason for his objection.

¶17.    On appeal, the State argues that Nailer is procedurally barred from complaining about this instruction because of his failure to provide any grounds for the objection, citing *Shirley v. State*, 942 So. 2d 322, 331 (¶40) (Miss. Ct. App. 2006) ("[N]o statement of issue based on the giving of an instruction to the jury will be considered on appeal unless specific objection was made to the instruction in the trial court stating the particular ground or grounds for such objection."). Nailer's counsel provided the trial court with no ground for his objection. Accordingly, the issue regarding Instruction S-2 is procedurally barred. *Id.*

¶18.    The procedural bar notwithstanding, Nailer's argument regarding Instruction S-2 still fails. The language of Instruction S-2 has been found proper by this Court. In *Young v. State*, 791 So. 2d 875, 879-80 (¶13) (Miss. Ct. App. 2001), which was the case the State cited before the trial court, we considered an instruction on intent and stated:

> Young argues that the trial judge erred in granting jury instruction D-2A. . . . Jury instruction D-2A instructed the jury as follows regarding intent: "The Court instructs the jury that intent is a state of mind existing at the time a person commits an offense. The mind of an alleged offender may be read from his acts, conduct, and inferences fairly deducible from all the circumstances." We now compare an explanation of intent as it reads in *Washington v. State*, 753 So. 2d 475, 478 (¶15) (Miss. Ct. App. 1999):
>
>> "Intent is an emotional operation of the mind, and it is usually shown by acts and declarations of the defendant coupled with facts and circumstances surrounding him at the time. Defendant's intention is manifested largely by the things he does." Stated differently, "[u]nless one expresses his intent, the only method by which intent may be proven is by showing the circumstances surrounding the incident.

*See also Moton v. State*, 999 So. 2d 1287, 1292 (¶18) (Miss. Ct. App. 2009). Instruction S-2 is nearly identical to the instruction we found proper in *Washington*. In *Davis v. State*, 18 So. 3d 842, 847 (¶14) (Miss. 2009), the supreme court stated:

> The standard of review when appellate courts consider issues involving jury instructions is well-established. Jury instructions must be read as a whole to determine if the instructions were proper. *Milano v. State*, 790 So. 2d 179, 184 (Miss. 2001). Jury instructions must fairly announce the law of the case and not create an injustice against the defendant. *Id*. This rule is summed up as follows: "In other words, if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results." *Id*. *See Adams v. State*, 772 So. 2d 1010, 1016 (Miss. 2000).

We find that Instruction S-2 is a correct statement of the law and that the trial court did not abuse its discretion in giving Instruction S-2.

¶19.    Nailer also alleges error by the trial court in giving Instruction S-5, which provided:

> The Court instructs that one does not have to possess ill-will toward or even know the identity of a specific individual to commit an aggravated assault on that person.

At trial Nailer argued that this was not a correct statement of the law. On appeal he contends that it was an impermissible comment on the evidence. Because Nailer raises a different basis for his objection to the instruction, the issue is not properly before this Court. *See Hearns v. State*, 313 So. 3d 533, 539 (¶18) (Miss. Ct. App. 2021). Again, the procedural bar aside, Nailer's issue on appeal concerning Instruction S-5 also fails. When a similar instruction was given in *Mack v. State*, 237 So. 3d 778, 792 (¶¶51-53) (Miss. Ct. App. 2017), this Court explained:

> Mack also claims that the circuit court abused its discretion by granting the State's proposed jury instruction S-5, which provided:

A person charged with aggravated assault does not have to possess ill-will toward his victim(s). A person charged with aggravated assault does not even have to know the identity of a specific individual to commit an aggravated assault upon that person.

In this trial this [r]ule of [l]aw means that [Mack] did not have to possess ill-will toward . . . Scott. It also means that [Mack] did not even have to know or recognize . . . Scott . . . to commit an aggravated assault upon him.

At the jury-instruction conference, the defense objected to instruction S-5 as an improper reference to Mack's state of mind. According to Mack's attorney, the instruction lacked a foundation in the evidence because no testimony had been presented as to Mack's state of mind and whether he possessed an ill will toward Scott. On appeal, Mack further asserts that instruction S-5 was unnecessary and repetitious and served to bias the jury against him.

We find no abuse of discretion by the circuit court's grant of proposed instruction S-5. In *Blanks v. State*, 542 So. 2d 222, 226 (Miss. 1989), the supreme court rejected the defendant's argument that ignorance of the assault victim's identity prevented the defendant from forming the intent necessary to commit the crime. The supreme court found that, even in the defendant's version of events, he clearly knew he was shooting at another human being. *Id*. According to the *Blanks* court, **a person "does not have to possess ill-will toward or even know the identity of a specific individual to commit an aggravated assault on that person**." *Id*. (citing *Davis v. State*, 476 So. 2d 608, 610 (Miss. 1985)). Based on Mississippi precedent, as well as the facts in the record of this case, we find jury instruction S-5 was a correct statement of the law. We therefore find this argument lacks merit.

(Emphasis added). Because we have previously approved the language in both Instructions S-2 and S-5, we find the trial court did not abuse its discretion in granting these instructions.

## IV. Whether Nailer's right to testify was violated.

¶20. In his pro se supplemental brief, Nailer contends he was denied his right to testify. According to Nailer, there is no record of his waiving his right to testify. At the conclusion of the arguments regarding Nailer's motion for directed verdict, the following colloquy

occurred:

> [The Court]: I do know that you need to have a discussion with your client about whether or not he wishes to testify should I deny your motion for directed verdict, so I assume that you will do that while we take a lunch break. And I do want to let you know, Mr. Nailer, that you are presumed under the law to be innocent.
>
> THE DEFENDANT: I'm sorry, Judge. I couldn't[.]
>
> THE COURT: You need me to speak louder?
>
> THE DEFENDANT: Please.
>
> THE COURT: Okay. Absolutely. You're presumed under the law to be innocent. You don't have to prove anything at all during this trial today. You need to discuss with your lawyer during the break today whether or not you choose to take the stand and testify on your own behalf. If you do choose to testify on your own behalf, you will be subject to cross-examination by the State. So you need to have a discussion with your lawyer about whether or not you want to do that. If you choose not to testify this afternoon, I will instruct the jury that they cannot hold that against you in their deliberations, and nor can they draw any inferences from the fact that you did not testify in your own defense. All right?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: This is your decision. Your decision alone. Your lawyers can't make this decision for you. You can get advice from them, but it should be your decision as to whether or not you testify, taking into consideration the advice that you get from your lawyers.
>
> THE DEFENDANT: Yes, ma'am.

The trial court then took Nailer's motion for a directed verdict under consideration. The trial court ultimately denied the motion, and then the following conversation occurred:

> THE COURT: Has the defense made any decision as to whether you're calling any witnesses or do you need a moment again with your client?
>
> MR. RAFFERTY: No, ma'am, your Honor. We are ready to go forward and

12

make that announcement.

THE COURT: All right. Anything from the State?

MR. RAFFERTY: Judge, we're not going forward with any evidence.

¶21. Nailer argues that it was error for the trial court to fail to ask him if he wished to testify and that asking defense counsel if he were going to call any witnesses was insufficient. As a result, Nailer contends that his constitutional right to testify was violated.

¶22. In *Jenkins v. State*, 284 So. 3d 862, 873-74 (¶¶26-28) (Miss. Ct. App. 2019), we explained what is required regarding a defendant's right to testify:

> Mississippi's jurisprudence on this issue has evolved from *Culberson v. State*, 412 So. 2d 1184 (Miss. 1982). During the hearing on his motion for a new trial, Culberson testified that he told his attorney that he wanted to testify, but his attorney never gave him an opportunity to do so. *Id*. at 1186. Incident to what would now be treated as a motion for post-conviction collateral relief, the Supreme Court remanded "the case for an evidentiary hearing to determine whether Culberson told his attorney [that] he wanted to testify . . . and whether the attorney disregarded the request and refused to permit Culberson to testify . . . ." *Id*. The Supreme Court also suggested that "in any case where a defendant does not testify, before the case is submitted to the jury, the defendant should be called before the court out of the [jury's] presence . . . and advised of his right to testify." *Id*. Furthermore, "[a] record should be made . . . . so that no question about [the] defendant's waiver of his right to testify should ever arise in the future." *Id*. at 1186-87. Regardless of whether a trial judge or defense counsel prevents a defendant from testifying, the result is a violation of his constitutional right to testify on his own behalf. *Id*. at 1186.
>
> Since the Supreme Court handed down *Culberson*, Mississippi appellate courts have clarified that trial judges should ensure that they make a record of the fact that they had advised defendants of their right to testify and inquired whether they intended to do so; but that was only a "strong" suggestion rather than an absolute requirement. *Shelton v. State*, 445 So. 2d 844, 847 (Miss. 1984); *Walker v. State*, 823 So. 2d 557, 561-62 (¶7) (Miss. Ct. App. 2002). Thus, when an appellant had been "represented by counsel throughout the proceeding and the record does not reflect any desire by [the] appellant to testify, the failure of the trial court to advise [him] of his right to testify does

not constitute reversible error." *Shelton*, 445 So. 2d at 847.

The right to testify in one's own defense has been described as "fundamental." *Spearman v. State*, 58 So. 3d 30, 34-35 (¶14) (Miss. Ct. App. 2011) (citing *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987)). An appellate court should "indulge every reasonable presumption against waiver of a fundamental constitutional right." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). Nevertheless, waiver by silence is not legally impossible. When defense counsel rests without calling the defendant and the defendant does not complain that he wants to testify, the defendant's silence is "prima facie proof that counsel was following [the defendant's] wishes . . . ." *Howard v. State*, 171 So. 3d 566, 573 (¶31) (Miss. Ct. App. 2015); *see also Jaco v. State*, 574 So. 2d 625, 634 (Miss. 1990) (finding no denial of defendants' right to testify where there was no *Culberson* colloquy, their attorneys rested without presenting any evidence, "[n]othing suggests that either defendant indicated of record a desire to testify," and "the point was not presented in any way . . . at trial . . ."); *Arrington v. State*, 69 So. 3d 29, 31-32 (¶¶4-8) (Miss. Ct. App. 2011) (During a *Culberson* colloquy, the defendant initially said he wanted to testify, defense counsel then announced that the defendant reconsidered and chose not to testify, and the defendant did not subsequently "express a desire to testify . . . ."); *Walker*, 823 So. 2d at 561 (¶6) (There was no *Culberson* colloquy, nothing in the record suggested that the defendant wanted to testify, and the point was not "available to" him on appeal because he did not raise it at trial.).

¶23. In *Jenkins*, the trial court did not provide Jenkins with a *Culberson* colloquy. *Id*. at 872 (¶23). Here, the trial court provided a *Culberson* colloquy. Further, Nailer remained silent when his trial counsel announced that they would present no evidence. We find that "it is not unreasonable to presume that [Nailer] waived his right to testify when he said nothing after defense counsel rested without presenting any evidence." *Id*. at 875 (¶36). This assignment of error is without merit.

¶24. Accordingly, Nailer's conviction and sentence are **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND WEDDLE, JJ., CONCUR. SMITH, J., NOT PARTICIPATING.**

14



15